**SEYFARTH SHAW LLP**
Christian J. Rowley (SBN 187293)
*crowley@seyfarth.com*
Eric M. Lloyd (SBN 254390)
*elloyd@seyfarth.com*
Matthew A. Goodin (SBN 169674)
*mgoodin@seyfarth.com*
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendant
MATCO TOOLS CORPORATION

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL AGUILERA, an individual; ROCIO AGUILERA, an individual; and SIMON GORO, an individual,<br><br>    Plaintiffs,<br><br>  vs.<br><br>MATCO TOOLS CORPORATION, a Delaware corporation,<br><br>    Defendant. | Case No. 3:19-cv-01576-AJB-AHG<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, FOR AN ORDER SHORTENING TIME ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Courtroom:  4A (4th Floor)<br>Judge:  Hon. Anthony J. Battaglia<br><br>Amended Complaint Filed August 22, 2019 |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1

II.  FACTS ................................................................................................................. 1

    A.  Defendant Matco Tools Corporation. .................................................. 1

    B.  Plaintiffs Simon Goro, Emanuel Aguilera And Rocio Aguilera.................... 2

    C.  Plaintiffs' Distributorship Agreements Require Arbitration In Ohio. ........... 2

    D.  The Ninth Circuit Recently Issued A Non-Binding Opinion Concerning The Forum-Selection Clause And Arbitration Provision In Another Distributor's Distributorship Agreement. ................................... 3

    E.  Plaintiffs Dismissed A Prior Action Against Matco In March 2019. ............. 4

    F.  Matco Filed A Petition To Compel Arbitration Of Plaintiffs' Individual Claims In The Northern District Of Ohio In March 2019.............. 5

    G.  Matco Initiated Arbitrations Against Plaintiffs In June 2019. ....................... 5

III.  LEGAL STANDARD .......................................................................................... 6

IV.  ARGUMENT....................................................................................................... 7

    A.  The "Crisis" Created By Plaintiffs Does Not Support Ex Parte Relief. ......... 7

    B.  Plaintiffs Are Unlikely To Succeed On The Merits........................................ 7

        1.  Comity Counsels Against Enjoining The N.D. Ohio Action. ............... 7

        2.  Plaintiffs' Distributorship Agreements Delegate Questions Of Arbitrability To An Arbitrator, And Plaintiffs Have Waived The Right To Challenge The Arbitration Provisions In Court. ............ 9

            a.  Per The Parties' Clear And Unmistakable Agreement, An Arbitrator Must Rule On Plaintiffs' Challenge To The Arbitration Provision. ...................................................... 9

            b.  Plaintiffs Waived The Ability To Raise An Arbitrability Challenge In Court By First Raising Arbitrability With The Arbitrators........................................................... 10

        3.  Collateral Estoppel Does Not Apply. ................................................. 11

            a.  Collateral Estoppel Is A Gateway Issue For An Arbitrator. ........................................................................ 11

            b.  The Elements Of Offensive Collateral Estoppel Are Not Present And Its Application Would Be Unfair To Matco In Any Event........................................................... 12

i

4.     The Arbitration Provision Is Enforceable. ............................ 14

  a.     The Arbitration Provision Is Enforceable Under Ohio Law. ................................................................................... 14

  b.     Unconscionability Is Absent Under California Law. ............... 16

  c.     The PAGA Waiver Is Severable. ............................................... 17

5.     The Forum-Selection Clause Is Enforceable. ...................... 19

  a.     The Clause Is Free From Fraud Or Overreaching. ................... 20

  b.     Plaintiffs Will Receive Their Day In Court. ............................ 20

  c.     Section 20040.5 And Labor Code § 925 Are Preempted. ........ 20

  d.     The Public Interest Factors Are Neutral. ................................. 21

6.     Restitution Is Unavailable As A Matter Of Law. ............... 21

C.    Plaintiffs Fail To Identify Any Imminent Irreparable Harm. ..................... 22

  1.     Plaintiffs' Inexplicable Delay Should Defeat Their Motion. ............. 22

  2.     Plaintiffs Identify Speculative Harm. .................................... 22

  3.     Plaintiffs Have Adequate Legal Remedies. ........................... 23

D.    The Low Likelihood Of Success On The Merits Requires Plaintiffs To Carry A Heavy Burden To Show That The Public Interest And The Balance Of The Hardships Weigh In Their Favor. ....................... 24

V.    CONCLUSION. ............................................................................. 25

ii

61183720v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aerojet-General Corp. v. Am. Arbitration Ass'n,*
   478 F.2d 248 (9th Cir. 1973) ................................................................. 18

*Alliance for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011) .............................................................. 22

*Allied-Bruce Terminix Cos., Inc. v. Dobson,*
   513 U.S. 265 (1995) ............................................................................... 20

*Atl. Marine Constr. Co. v. Dist. Court,*
   134 S. Ct. 568 (2013) ................................................................. 19, 20, 21

*Autoridad de Energia ElEctrica v. Vitol S.A.,*
   859 F.3d 140 (1st Cir. 2017) ................................................................. 19

*Axis Reinsurance Co. v. Northrop Grumman Corp.,*
   No. 2:17-cv-08660-AB, 2018 U.S. Dist. LEXIS 222622 (C.D. Cal. June
   18, 2018) ................................................................................................... 8

*Balducci v. Congo Ltd.,*
   No. 17-cv-04062-KAW, 2017 U.S. Dist. LEXIS 154523 (N.D. Cal. Sept.
   21, 2017) ................................................................................. 19, 20, 21

*Beauperthuy v. 24 Hour Fitness USA, Inc.,*
   No. 06-0715-SC, 2012 U.S. Dist. LEXIS 127071 (N.D. Cal. July 5, 2012) ................. 8

*Bell Prods. v. Hosp. Bldg. & Equip. Co.,*
   No. 16-cv-04515-JSC, 2017 U.S. Dist. LEXIS 9183 (N.D. Cal. Jan. 23,
   2017) (Cal. Code Civ. Proc. § 410.42(a)(1) preempted pursuant to
   *Bradley*) ................................................................................................. 20

*Bergh v. Wash.,*
   535 F.2d 505 (9th Cir. 1976) .............................................................. 8, 25

*Bradley v. Harris Research Inc.,*
   275 F.3d 884 (9th Cir. 2001) ............................................................. 4, 20

iii

61183720v.1

*Brady Mktg. Co. v. KAI USA, Ltd.*,
    No. 16-cv-02854-RS, 2016 U.S. Dist. LEXIS 115877 (N.D. Cal. Aug. 29,
    2016) .................................................................................................... 19

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ............................................................. 10

*Brock v. Copart of Wash., Inc.*,
    No. 3:18-CV-02012-BR, 2019 U.S. Dist. LEXIS 30981 (D. Ore. Feb. 27,
    2019) ...................................................................................................... 9

*Capon v. Ladenburg, Thalman Co., Inc.*,
    92 Fed. Appx. 400 (9th Cir. 2004)....................................................... 23

*Citigroup v. Abu Dhabi Inv. Auth.*,
    776 F.3d 126 (2d Cir. 2015) ................................................................ 12

*Collins v. D.R. Horton, Inc.*,
    505 F.3d 874 (9th Cir. 2007) ............................................................... 13

*Cooper v. MRM Inv. Co.*,
    367 F.3d 493 (6th Cir. 2004) ............................................................... 15

*Corp. Express Office Prods., Inc. v. Can Guelpen*,
    No. C 02-04588 WHA, 2002 U.S. Dist. LEXIS 27642 (N.D. Cal. Dec.
    12, 2002) ............................................................................................... 18

*Dvorsky v. Axis Global Sys., LLC*,
    No. CV 17-422 DMG, 2017 U.S. Dist. LEXIS 222959 (C.D. Cal. June
    15, 2017) ................................................................................................. 9

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)............................................................................. 23

*Echevarria v. Aerotek, Inc.*,
    9th Cir. Case No. 19-16275 ................................................................. 17

*Echevarria v. Aerotek, Inc.*,
    No. 16-cv-04041-BLF, 2019 U.S. Dist. LEXIS 118470 (N.D. Cal. July
    16, 2019) ............................................................................................... 17

*EEC, Inc. v. Baker Hughes Oilfield Ops., Inc.*,
    460 Fed. Appx. 731 (10th Cir. 2012).................................................... 12

iv

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ............................................................................... 17

*Erichsen v. Cty. of Orange*,
  No. 16-55763, 677 Fed. Appx. 379 (9th Cir. Feb. 17, 2017) ....................... 7

*Estrada v. CleanNet USA, Inc.*,
   No. C 14-01785 JSW, 2015 U.S. Dist. LEXIS 22403 (N.D. Cal. Feb. 24,
  2015) ...................................................................................................... 16, 17

*Exxon Corp. v. U.S. Dep't of Energy*,
   594 F. Supp. 84 (D. Del. 1984) ..................................................................... 8

*Fid. Brokerage Servs. LLC v. York*,
  No. EDCV 19-1929-JGB, 2019 U.S. Dist. LEXIS 186795 (C.D. Cal. Oct.
  23, 2019) ....................................................................................................... 6

*Fleming v. Matco Tools Corp.*,
  384 F. Supp. 3d 1124 (N.D. Cal. 2019) ........................................... 4, 13, 14

*Fleming v. Matco Tools Corp.*
  (N.D. Cal. Case No. 19-cv-00463-WHO) ............................................. *passim*

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ....................................................................... 22

*Goldman v. U.S. Transp. & Logistics, LLC*,
  No. 17-cv-00691-BAS-NLS, 2017 U.S. Dist. LEXIS 210423 (S.D. Cal.
  Dec. 20, 2017) .............................................................................................. 19

*Granny Goose Foods v. Bhd. Of Teamsters & Auto Truck Drivers*,
  415 U.S. 423 (1974) ...................................................................................... 6

*Gutierrez v. FriendFinder Networks, Inc.*,
  No. 18-cv-05918-BLF, 2019 U.S. Dist. LEXIS 75310 (N.D. Cal. May 3,
  2019) ............................................................................................................ 10

*Guzy v. Guzy*,
  No. 3:19-CV-00129-RCJ-CBC, 2019 U.S. Dist. LEXIS 51874 (D. Nev.
  Mar. 26, 2019) .................................................................................. 23, 24, 25

*Han v. Mobil Oil Corp.*,
  73 F.3d 872 (9th Cir. 1995) ......................................................................... 17

v

*Hanginout, Inc. v. Google, Inc.*,
    54 F. Supp. 3d 1109 (S.D. Cal. 2014)........................................................................22

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*,
    736 F.3d 1239 (9th Cir. 2013) ................................................................................22

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)....................................................................................................11

*Jean v. The Stanley Works*,
    No. 1:04CV1904, 2008 U.S. Dist. LEXIS 54578 (N.D. Ohio July 14,
    2008) .........................................................................................................................15

*Johnson v. Ventra Grp., Inc.*,
    191 F.3d 732 (6th Cir. 1999) ..................................................................................24

*Kitagawa v. World Airways, Inc.*,
    No. 06-00168 SOM/BMK, 2006 U.S. Dist. LEXIS 41575 (D. Haw. June
    20, 2006) ...................................................................................................................11

*Klay v. United Healthgroup, Inc.*,
    376 F.3d 1092 (11th Cir. 2004) .........................................................................12, 23

*Las Vegas v. Mirage Casino-Hotel, Inc.*,
    911 F.3d 588 (9th Cir. 2018) ..................................................................................12

*Liviz v. Howard*,
    No. 19-cv-10096-PJB, 2019 U.S. Dist. LEXIS 36440 (D. Mass Mar. 4,
    2019) .........................................................................................................................23

*Lydo Enters. Inc. v. Las Vegas*,
    745 F.2d 1211 (9th Cir. 1984) ...........................................................................22, 23

*In re Matco Tools Corp.*,
    781 Fed. Appx. 681 (9th Cir. 2019)...........................................................1, 4, 13, 14

*In re Matco Tools Corp.*,
    No. 19-71352, 2020 U.S. App. LEXIS 95 (9th Cir. Jan. 3, 2020) ...................4, 13, 14

*McLellan v. Fitbit, Inc.*,
    No. 3:16-cv-00036-JD, 2017 U.S. Dist. LEXIS 168370 (N.D. Cal. Oct.
    11, 2017) ...................................................................................................................10

61183720v.1

*McMillan v. Lowe's Home Ctrs., LLC*,
No. 1:15-CV-00695-KJM-SMS, 2016 U.S. Dist. LEXIS 6673 (E.D. Cal. Jan. 20, 2016) ................................................................................................ 13

*Meadows v. Dickey's Barbeque Rests., Inc.*,
144 F. Supp. 3d 1069 (N.D. Cal. 2015) ....................................................... 10

*Mgmt. Recruiters Intern., Inc. v. Bloor*,
129 F.3d 851 (6th Cir. 1997) ....................................................................... 15

*Miller v. Time Warner Cable Inc.*,
No. 8:16-cv-00329-CAS, 2016 U.S. Dist. LEXIS 179444 (C.D. Cal. Dec. 27, 2016) ................................................................................................... 10

*Mission Power Eng'g Co. v. Continental Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) ............................................................... 6

*Monastiero v. appMobi, Inc.*,
No. C 13-05711 SI, 2014 U.S. Dist. LEXIS 67202 (N.D. Cal. May 15, 2014) .......................................................................................................... 19

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2004) ..................................................................... 20

*Muzumdar v. Wellness Int'l Network, Ltd.*,
438 F.3d 759 (7th Cir. 2006) ....................................................................... 19

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) ..................................................................... 18

*Nationwide Biweekly Admin., Inc. v. Owen*,
873 F.3d 716 (9th Cir. 2017) ....................................................................... 24

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
434 U.S. 1345 (1977) ..................................................................................... 6

*Orion Pictures Corp. v. Writers Guild of Am., West, Inc.*,
946 F.2d 722 (9th Cir. 1991) .................................................................. 10, 11

*Paramount Pictures Corp v. Int'l Media Films, Inc*,
No. CV 11-09112 SJO, 2012 U.S. Dist. LEXIS 196281 (C.D. Cal. Apr. 6, 2012) .......................................................................................................... 14

*Petland, Inc. v. Hendrix*,
No. 2:04-CV-224, 2004 U.S. Dist. LEXIS (S.D. Ohio Sept. 14, 2004) ..................... 16

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987, 1002 (9th Cir. 2010), 846 F.3d 1251 (9th Cir. 2017) ........................... 17

*Polimaster Ltd. v. RAE Sys.*,
623 F.3d 832 (9th Cir. 2010) ....................................................................... 17

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251, 1260 (9th Cir. 2017) ............................................................ 17

*Rancho Magana/Niyip S.P.R. DE R.L. v. Apio, Inc.*,
No. 08CV1773 BEN (NLS), 2009 U.S. Dist. LEXIS 142477 (S.D. Cal.
Aug. 4, 2009) ...................................................................................... 12

*Republic of Ecuador v. Chevron Corp.*,
638 F.3d 384 (2d Cir. 2011) ....................................................................... 12

*Roberts v. C.R. England, Inc.*,
827 F. Supp. 2d 1078 (N.D. Cal. 2011) ........................................................ 20

*S. Cty. Prof'l Park, Ltd. v. Orchard Supply Co. LLC*,
No. 5:14-cv-02348-PSG, 2014 U.S. Dist. LEXIS 100064 (N.D. Cal. July
21, 2014) ............................................................................................ 21

*Sakkab v. Luxottica Retail N. Am. Inc.*,
803 F.3d 425 (9th Cir. 2015) ..................................................................... 17

*Southwest Voter Registration Educ. Project v. Shelley*,
344 F.3d 914 (9th Cir. 2003) ..................................................................... 25

*Sussex v. Dist. Court*,
781 F.3d 1065 (9th Cir. 2015) ..................................................................... 9

*Syverson v. Int'l Bus. Machines Corp.*,
472 F.3d 1072 (9th Cir. 2007) ............................................................... 12, 13

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ......................................................... 14, 16, 17

*Van Cauwenberghe v. Biard*,
486 U.S. 517 (1988) ................................................................................ 13

61183720v.1

*Willick v. Napoli Bern Ripka & Assocs., LLP*,
    No. 2:15-cv-00652-AB (Ex), 2019 U.S. Dist. LEXIS 168441 (C.D. Cal.
    May 9, 2019) ................................................................................................ 9

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................... 7, 22

*Writers Guild of Am., West, Inc. v. Sweetpea Entm't Corp.*,
    No. 06-55059, 255 Fed. Appx. 114 (9th Cir. Nov. 1, 2007) ....................... 11

**State Cases**

*Eagle v. Fred Martin Motor Co.*,
    9th Dist. No. 21522, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d
    1161 (9th Dist. 2004) ................................................................................ 15

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
    238 Cal. App. 4th 124 (Cal. Ct. App. 2015) .............................................. 21

*Hayes v. Oakridge Home*,
    122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408 (2009) ............. 14, 15

*Info. Leasing Corp. v. King*,
    1st Dist. No. C-020830, 155 Ohio App.3d 201, 2003-Ohio-5672, 800
    N.E.2d 73 (1st Dist. 2003) ....................................................................... 15

*Iskanian v. CLS Transp. Los Angeles, LLC*,
    59 Cal.4th 348 (Cal. 2014) ....................................................................... 17

*Love v. Crestmont Cadillac*,
    8th Dist. No. 104807, 2017-Ohio-1555, 90 N.E.3d 123 (8th Dist. 2017) ............. 14, 18

*Madrid v. Perot Sys. Corp.*,
    130 Cal. App. 4th 440 (Cal. Ct. App. 2005) .............................................. 22

*Neubrander v. Dean Witter Reynolds, Inc.*,
    81 Ohio App.3d 308, 610 N.E.2d 1089 (9th Dist. 1992) ........................... 15

*Post v. Procare Automotive Serv. Sols.*,
    8th Dist. Cuyahoga No. 87646, 2007-Ohio-2106 (8th Dist. 2007) ............. 15

*Serpa v. Cal. Sur. Investigations, Inc.*,
    215 Cal. App. 4th 695 (Cal. Ct. App. 2013) ......................................... 16, 17

*Smith, Valentino & Smith, Inc. v. Superior Court,*
   17 Cal.3d 491 (Cal. 1976) .......................................................................... 17

**Federal Statutes**

9 U.S.C. § 2 .................................................................................................... 20

Federal Arbitration Act ............................................................... 4, 20, 22, 24

**State Statutes**

Cal. Civil Code § 3513 ................................................................................... 24

Cal. Lab. Code § 925 ............................................................................... 20, 24

Cal. Bus. & Prof. Code § 20040.5 .......................................................... 4, 20, 24

**Rules**

Ninth Circuit Rule 36-3(a) ...................................................................... 17, 19

Rule 41 ........................................................................................................... 12

**Other Authorities**

Restatement (Second) of Conflicts of Laws, § 187(2) .................................. 24

61183720v.1

## I.   INTRODUCTION

There is no reason why Plaintiffs could not have sought the relief they now seek in the spring or summer of last year.  The matters Plaintiffs ask this Court to enjoin were initiated in March 2019 and June 2019, respectively.  Nothing prevented Plaintiffs from acting sooner than they chose.  And because the "crisis" purporting to justify the extraordinary relief they seek is the direct result of their choice to defer taking any sort of action, Plaintiffs' Ex Parte Application should be denied in its entirety.

Plaintiffs' belated request for a temporary restraining order should be denied.  The district court litigation they seek to enjoin is nearing its conclusion.  Indeed, the Petition to Compel Arbitration was fully briefed before Plaintiffs filed this application.  In addition, the arbitrations Plaintiffs seek to enjoin are progressing toward their conclusions.  In those matters, Plaintiffs requested the opportunity to challenge the arbitration provision in their Distributorship Agreements, and one of the arbitrators has ruled that it is enforceable.  Plaintiffs thus waived the ability to challenge the arbitration provision, which, it must be noted, delegates arbitrability questions to an arbitrator.

Plaintiffs' request for a temporary restraining order suffers from myriad other defects compelling its denial.  For instance, the Ninth Circuit's opinion in *In re Matco Tools Corp.*, which is referenced throughout Plaintiffs' memorandum, has no collateral estoppel effect, and, as explained below, both the arbitration provision and the forum-selection clause Plaintiffs challenge here are valid and enforceable.  What is more, Plaintiffs identify no imminent irreparable harm justifying the extraordinary remedy of injunctive relief.  Their application should accordingly be denied.

## II.   FACTS

### A.   Defendant Matco Tools Corporation.

Matco is a manufacturer of high-quality, durable tools with a principal place of business in Stow, Ohio.  (Swanson Dec. ¶ 2.)  Matco grants entrepreneurs a license to display and sell Matco branded tools through independently owned and operated "mobile distributorship" franchises.  (*Id.*)  To obtain that right, franchisees pay a fee and agree to

1

operate their distributorships in accordance with guidelines and standards set forth in Matco's Distributorship Agreement.  (*Id.*)  Notwithstanding those guidelines and standards, each entrepreneur has control over his or her schedule, finances, employees, benefits, and day-to-day operations.  (*Id.*)  Franchisees are, in form and in substance, independent business owners.

## B.    Plaintiffs Simon Goro, Emanuel Aguilera And Rocio Aguilera.

Goro, and his spouse, Deidre Goro, signed a Distributorship Agreement in June 2018 and Goro operated a distributorship until November 2018.  (Swanson Dec. ¶ 3, Ex. 2.)  Mr. and Mrs. Goro borrowed funds from Matco pursuant to a promissory note in connection with the franchise.  (*Id.* ¶ 3)  Goro purchased tools from Matco which he sold to his customers.  (*Id.*)

Mr. and Mrs. Aguilera executed a Distributorship Agreement in June 2018 and Mr. Aguilera operated a distributorship until November 2018.  (Swanson Dec. ¶ 4, Ex. 4.) Mr. and Mrs. Aguilera borrowed funds from Matco pursuant to a promissory note in connection with the franchise.  (*Id.* ¶ 4.)  Mr. Aguilera purchased tools from Matco which he sold to his customers.  (*Id.*)

## C.    Plaintiffs' Distributorship Agreements Require Arbitration In Ohio.

Pursuant to the Distributorship Agreements, Plaintiffs, Mrs. Goro and Matco all agreed to arbitrate, with limited exceptions, their respective disputes:

> **12.1 Arbitration.** Except as expressly provided in Section 12.5 of this Agreement, all breaches, claims, causes of action, demands, disputes and controversies (collectively referred to as "breaches" or "breach") between the Distributor, including his/her Spouse, immediate family members, heirs, executors, successors, assigns, shareholders, partners or guarantors, and Matco, including its employees, agents, officers or directors and its parent, subsidiary or affiliated companies, whether styled as an individual claim, class action claim, private attorney general claim or otherwise, arising from or related to this Agreement, the offer or sale of the franchise and distribution rights contained in this Agreement, the relationship of Matco and Distributor, or Distributor's operation of the Distributorship, including any allegations of fraud, misrepresentation, and violation of any federal, state or local law or regulation, will be determined exclusively by binding arbitration on an individual, non-class basis only in accordance with the Rules and Regulations of the American Arbitration Association ("Arbitration").

2

61183720v.1

(Swanson Dec., Exs. 2 & 4 at § 12.1.)

In addition, all parties agreed to arbitrate in Ohio:

**12.10 Venue and Jurisdiction.** Unless this requirement is prohibited by law, all arbitration hearings must and will take place exclusively in Summit or Cuyahoga County, Ohio. All court actions, mediations or other hearings or proceedings initiated by either party against the other party must and will be venued exclusively in Summit or Cuyahoga County, Ohio. Matco (including its employees, agents, officers or directors and its parent, subsidiary or affiliated companies) and the Distributor (including where applicable the Distributor's Spouse, immediate family members, owners, heirs, executors, successors, assigns, shareholders, partners, and guarantors) do hereby agree and submit to personal jurisdiction in Summit or Cuyahoga County, Ohio in connection with any Arbitration hearings, court hearings or other hearings, including any lawsuit challenging the arbitration provisions of this Agreement or the decision of the arbitrator, and do hereby waive any rights to contest venue and jurisdiction in Summit or Cuyahoga County, Ohio and any claims that venue and jurisdiction are invalid. In the event the law of the jurisdictions in which Distributor operates the Distributorship require that arbitration proceedings be conducted in that state, the Arbitration hearings under this Agreement shall be conducted in the state in which the principal office of the Distributorship is located, and in the city closest to the Distributorship in which the American Arbitration Association has an office. Notwithstanding this Article, any actions brought by either party to enforce the decision of the arbitrator may be venued in any court of competent jurisdiction.

(Swanson Dec., Exs. 2 & 4. at § 12.10.)

Plaintiffs acknowledged that they personally reviewed the Distributorship Agreements, and, that they understood that the Agreements contained provisions regarding "required arbitration" and "designated locations or states for arbitration." (Swanson Dec. ¶¶ 3-4, Exs. 1, 3 (Nos. 5-6).) Goro represented that he "discussed the economic and business risks of owning and operating the Distributorship with an attorney, accountant or other professional advisor." (*Id.*, Ex. 1 (No. 9).)

**D.    The Ninth Circuit Recently Issued A Non-Binding Opinion Concerning The Forum-Selection Clause And Arbitration Provision In Another Distributor's Distributorship Agreement.**

Matco is involved in litigation with another former distributor in *Fleming v. Matco Tools Corp.* (N.D. Cal. Case No. 19-cv-00463-WHO). Matco moved to enforce the Ohio forum-selection clause in Fleming's Distributorship Agreements by filing a *forum non*

3

*conveniens* motion in February 2019.[1] *Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124, 1127-29 (N.D. Cal. 2019). The court denied the motion on May 3, 2019, holding that the Federal Arbitration Act ("FAA") did not preempt Cal. Bus. & Prof. Code section 20040.5 ("Section 20040.5") (which bars non-California forum-selection clauses in franchise agreements) because it deemed the arbitration provision containing the forum-selection clause invalid.[2] *Id.* at 1129-33. The court held that the private attorney general claim waiver in Section 12.7 of Fleming's agreements[3] rendered the arbitration provision invalid in light of a "blow up" provision in Section 12.12. *Id.*

In June 2019, Matco filed a Petition for Writ of Mandamus with the Ninth Circuit, seeking review of the court's ruling "that in order to rule on the enforceability of a forum-selection clause set forth in an arbitration provision, it first had to determine the validity of the arbitration provision." (Litney Dec., Ex. O at 5.) The Petition was denied on October 25, 2019. *In re Matco Tools Corp.*, 781 Fed. Appx. 681 (9th Cir. 2019). Matco then filed a Petition for Rehearing En Banc, which was denied on January 3, 2020. *In re Matco Tools Corp.*, No. 19-71352, 2020 U.S. App. LEXIS 95 (9th Cir. Jan. 3, 2020).

### E.  Plaintiffs Dismissed A Prior Action Against Matco In March 2019.

In December 2018, Plaintiffs filed a class action against Matco, seeking to convert their franchise purchases into employment relationships. (Litney Dec. Ex. C.) Matco removed the lawsuit to the N.D. Cal. in January 2019. (Lloyd Dec. ¶ 2.)

On March 11, 2019, Matco moved to dismiss or transfer Plaintiffs' lawsuit to the N.D. Ohio. (Lloyd Dec. ¶ 3.) Rather than oppose the motion, Plaintiffs offered to

---

[1] Fleming did not execute the same Distributorship Agreement as Plaintiffs. However, the forum-selection clause in Fleming's agreement does not materially differ from the corresponding provision in the agreements signed by Plaintiffs.
[2] Section 20040.5 is preempted by the FAA. *Bradley v. Harris Research Inc.*, 275 F.3d 884, 886, 890 (9th Cir. 2001).
[3] Section 12.7 reads, "No matter how styled by the party bringing the claim, any claim or dispute is to be arbitrated on an individual basis and not as a class action. THE DISTRIBUTOR EXPRESSLY WAIVES ANY RIGHT TO ARBITRATE OR LITIGATE AS A CLASS ACTION OR IN A PRIVATE ATTORNEY GENERAL CAPACITY." *Fleming*, 384 F. Supp. 3d at 1132. The Distributorship Agreements signed by Plaintiffs also contain class action and private attorney general claim waivers, albeit phrased differently. (Swanson Dec. Exs 2 & 4 at § 12.7.)

4

dismiss their case.  (*Id.*)  Matco agreed to stipulate to a voluntary dismissal.  (*Id.*)  The Parties filed a request for dismissal on March 22, 2019.  (*Id.*)  The N.D. Cal. dismissed Plaintiffs' complaint without prejudice on March 26, 2019.  (Litney Dec. Ex. D.)

### F.    Matco Filed A Petition To Compel Arbitration Of Plaintiffs' Individual Claims In The Northern District Of Ohio In March 2019.

On March 25, 2019, Matco filed a Petition to Compel Arbitration in the N.D. Ohio. (Litney Dec., Ex. E.)  The Petition seeks an order compelling Plaintiffs to arbitrate their claims against Matco in Ohio.  (*Id.*)  Matco filed its brief in support of its Petition on September 9, 2019.  (Lloyd Dec., Ex. 1.)  Plaintiffs filed their brief in opposition on October 9, 2019.  (*Id.*, Ex. 2.)  Matco then filed its reply brief on October 23, 2019.  (*Id.*, Ex. 3.)  Plaintiffs then filed a sur-reply addressing the potential collateral estoppel effect of the Ninth Circuit's ruling on Matco's Petition for Writ of Mandamus (*see* Section II.D, *supra*).  (*Id.*, Ex. 4)    Matco filed its response thereto on November 17, 2019.  (*Id.*, Ex. 5.)  The N.D. Ohio has not scheduled a hearing and the Parties await the court's direction as to the next steps.  (*Id.* ¶ 4.)

### G.    Matco Initiated Arbitrations Against Plaintiffs In June 2019.

On June 28, 2019, Matco submitted separate Demands for Arbitration against Mr. and Mrs. Aguilera, and, Mr. and Mrs. Goro, to the American Arbitration Association ("AAA"), relating to their failure to pay amounts due to Matco in connection with the operation of their distributorships.  (Lloyd Dec. ¶ 5.)

The Parties participated in a hearing in the Aguilera arbitration on September 19, 2019.  (Lloyd Dec. ¶ 6.)  During the hearing, counsel for the Aguileras requested the opportunity to contest the arbitration provision in the Distributorship Agreement, which the arbitrator granted.  (*Id.*)  Mr. and Mrs. Aguilera filed their brief on October 17, 2019, while Matco filed its response on October 31, 2019.  (*Id.* ¶ 6, Exs. 6, 7.)  Thereafter, Mr. and Mrs. Aguilera submitted further briefing addressing the impact of the Ninth Circuit's decision in *Fleming* on November 21, 2019, to which Matco responded on November 27,

2019.  (*Id.* ¶ 6, Exs. 8, 9.)  On December 16, 2019, the arbitrator ruled that the arbitration provision and the forum-selection clause were enforceable.  (*Id.* ¶ 6, Ex. 10.)  The arbitration is scheduled for March 25, 2020.  (*Id.* ¶ 6.)

The parties in the arbitration involving Mr. and Mrs. Goro participated in a hearing on January 8, 2020.  (Lloyd Dec. ¶ 8.)  During the hearing, counsel for Mr. and Mrs. Goro requested the opportunity to challenge the arbitration provision in their Distributorship Agreement.  (*Id.*)  The arbitrator directed Mr. and Mrs. Goro to file their opening brief on February 7, 2020, and briefing will be complete on February 28, 2020. (*Id.*)  The arbitrator also scheduled a status conference for March 6, 2020.  (*Id.*)

## III.   LEGAL STANDARD

"Our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974) (discussing ex parte temporary restraining orders).  Accordingly, "[e]x parte motions are rarely justified." *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  To justify ex parte relief, "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Id.* at 492.  In addition, "[w]hen seeking a temporary restraining order through an ex parte application, a plaintiff must further show that he is without fault in creating the crisis necessitating the bypass of regular motion procedures." *Fid. Brokerage Servs. LLC v. York*, No. EDCV 19-1929-JGB (SPx), 2019 U.S. Dist. LEXIS 186795, *9 (C.D. Cal. Oct. 23, 2019).

Temporary restraining orders are governed by the same standards applicable to preliminary injunctions. *New Motor Vehicle Bd. v. Orrin W. Fox Co.*,  434 U.S. 1345, 1347 n.2 (1977).  To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is

6

61183720v.1

in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## IV.    ARGUMENT

### A.    The "Crisis" Created By Plaintiffs Does Not Support Ex Parte Relief.

A "crisis" resulting from inaction cannot support ex parte relief. Matco filed its Petition to Compel Arbitration on March 25, 2019. (Lloyd Dec. ¶ 4.) It further submitted its demands for arbitration to the AAA on June 28, 2019. (*Id.* ¶ 5.) Any "harm" purportedly arising from those proceedings was foreseeable when they were initiated. Yet Plaintiffs waited until January 13, 2020 before seeking a temporary restraining order. Why did they wait until now? Plaintiffs do not say.

Because there is no excuse for their delay, Plaintiffs implore the Court to focus to the proximity of several deadlines—the arbitrator's January 9, 2020 order granting Goro's request to file a motion challenging the arbitration provision in his Distributorship Agreement by February 7, 2020, and, the January 31, 2020 discovery cutoff in the Aguilera arbitration. (Lloyd Dec. ¶¶ 6, 8.) But those deadlines, to the extent they are a "crisis," are a "crisis" of Plaintiffs' making, brought about by their lack of diligence. Neither a temporary restraining order nor an order shortening time are warranted as a result. *Erichsen v. Cty. of Orange*, No. 16-55763, 677 Fed. Appx. 379, 380 (9th Cir. Feb. 17, 2017) (affirming denial of ex parte application for temporary restraining order "because [appellants] did not establish they were 'without fault in creating the crisis'").

### B.    Plaintiffs Are Unlikely To Succeed On The Merits.

#### 1.    Comity Counsels Against Enjoining The N.D. Ohio Action.

Plaintiffs ask this Court to do something extraordinary: to interfere with another federal case that will have been pending nearly a year by the time this motion is heard. Matco's Petition to Compel Arbitration, filed on March 25, 2019, has been exhaustively briefed, and the Parties are awaiting the court's direction on the disposition. (Lloyd Dec. ¶ 4.) This is precisely the scenario the Ninth Circuit counsels against:

> When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the

7

usual measure of restraint, and such injunctions should be granted in only the most unusual cases. Where, as here, the two federal courts are of coordinate jurisdiction[,] the issuance of such an injunction is rarely, if ever, justified. In such cases, the proper exercise of restraint in the name of comity keeps to a minimum the conflicts between courts administering the same law, conserves judicial time and expense, and has a salutary effect upon the prompt and efficient administration of justice.

*Bergh v. Wash.*, 535 F.2d 505, 507 (9th Cir. 1976). Moreover, "[c]ourts also hesitate to enjoin litigation that has already progressed significantly." *Axis Reinsurance Co. v. Northrop Grumman Corp.*, No. 2:17-cv-08660-AB (JCx), 2018 U.S. Dist. LEXIS 222622, *7-11 (C.D. Cal. June 18, 2018) (declining to enjoin case in which dispositive motions were filed); *see Exxon Corp. v. U.S. Dep't of Energy*, 594 F. Supp. 84, 91 (D. Del. 1984) (declining to "review, enjoin or otherwise interfere with the Wyoming District Court"). Principles of comity require that this Court reject Plaintiffs' remarkable request.

Plaintiffs cite a "most unusual case" in support of their position, and it does not advance their argument. In *Beauperthuy v. 24 Hour Fitness USA, Inc.*, following the decertification of two large classes, class counsel filed arbitration demands on behalf of 983 individuals. *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715-SC, 2012 U.S. Dist. LEXIS 127071, *12 (N.D. Cal. July 5, 2012). These individuals filed a motion to compel arbitration in the N.D. Cal., later amended to include only 16 individuals, which the court granted. *Id.* at *15-16. Several days later, 273 more individual petitions to compel were filed. *Id.* at *17. The defendant then filed petitions to compel arbitration against 257 of these individuals in courts outside the N.D. Cal. *Id.* This situation resulted from "counsel's dysfunctional relationship[, which] eventually culminated in a declaration of 'war'" bringing about "a state of paralysis," which, by the time of the court's order, spanned "six years of formal legal proceedings, hundreds of filings [and] countless tactical maneuvers." *Id.* at *9-10, 12, 17. The court thus enjoined the defendant from litigating the petitions to compel it filed across the country. *Id.* at *38-54. That quagmire does not resemble the straightforward matter pending in the N.D. Ohio.

61183720v.1

2. **Plaintiffs' Distributorship Agreements Delegate Questions Of Arbitrability To An Arbitrator, And Plaintiffs Have Waived The Right To Challenge The Arbitration Provisions In Court.**

   a. **Per The Parties' Clear And Unmistakable Agreement, An Arbitrator Must Rule On Plaintiffs' Challenge To The Arbitration Provision.**

The Court should abstain from intervening in the arbitrations. "[J]udicial review prior to the rendition of a final arbitration award should be indulged…only in the most extreme cases." *Sussex v. Dist. Court*, 781 F.3d 1065, 1072 (9th Cir. 2015) (quoting *Aerojet-General Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248 (9th Cir. 1973)) (granting mandamus on ground that court impermissibly intervened in arbitration). While there is "the remote possibility of an extreme case that could cause 'severe irreparable injury' from an error that 'cannot effectively be remedied on appeal from the final judgment' and that would result in 'manifest injustice,'" (*id.* at 1073), "no intervention of an ongoing arbitration has ever been approved." *Willick v. Napoli Bern Ripka & Assocs., LLP*, No. 2:15-cv-00652-AB (Ex), 2019 U.S. Dist. LEXIS 168441, *6-7 (C.D. Cal. May 9, 2019). "[C]ost and delay alone do not constitute the sort of 'severe irreparable injury' or manifest injustice' that could justify such a step." *Sussex*, 781 F.3d at 1075.

Such logic is apt here. Plaintiffs' Distributorship Agreements delegate arbitrability questions, and an arbitrator thus must rule on the enforceability of the arbitration provisions. Per Section 12.1, all "disputes and controversies…arising from or related to this Agreement…will be determined exclusively by binding arbitration." (Swanson Dec., Exs. 2 & 4 at § 12.1.) Courts have repeatedly found similar language shows a clear and unmistakable agreement to delegate arbitrability questions. *Brock v. Copart of Wash., Inc.*, No. 3:18-CV-02012-BR, 2019 U.S. Dist. LEXIS 30981, *5 (D. Ore. Feb. 27, 2019) ("[T]he Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement."); *Dvorsky v. Axis Global Sys., LLC*, No. CV 17-422 DMG (AJWx), 2017 U.S. Dist. LEXIS 222959, *2 (C.D. Cal. June 15, 2017)

("[a]ny and all disputes arising under or *relating in any way to the interpretation or application of this Agreement*…shall be subject to arbitration").  Further, the fact that the AAA Rules govern the arbitration is also evidence of the parties' intent to delegate arbitrability questions.  (Swanson Dec., Exs. 2 & 4 at § 12.1.)  *Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS (ASx), 2016 U.S. Dist. LEXIS 179444, \*10-13 (C.D. Cal. Dec. 27, 2016) ("incorporation of AAA's rules clearly and unmistakably shows the parties' intent to delegate the issue of arbitrability to the arbitrator").[4]

Because the Distributorship Agreements make clear that the Parties agreed to submit questions of arbitrability to an arbitrator—and, because Plaintiffs failed to "make any arguments specific to the delegation provision…and instead argued that the [arbitration provision] *as a whole* is unconscionable under state law"—Plaintiffs cannot prevail on their claims premised on the arbitration provisions' purported invalidity.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1133-34 (9th Cir. 2015) (affirming dismissal of case in favor of arbitration) (citations and punctuation omitted).

> **b.  Plaintiffs Waived The Ability To Raise An Arbitrability Challenge In Court By First Raising Arbitrability With The Arbitrators.**

Plaintiffs waived the right to seek a court ruling concerning arbitrability.  Courts may not resolve such questions "at the behest of a party which has submitted the question of arbitrability to the arbitrator for decision."  *Orion Pictures Corp. v. Writers Guild of Am., West, Inc.*, 946 F.2d 722, 725 (9th Cir. 1991).  Where parties demonstrate the intent to grant an arbitrator authority to rule on arbitrability, they "are not entitled to interrupt

---

[4] The "greater weight of authority" agrees that incorporation of the AAA Rules is clear and unmistakable evidence that the parties agreed to delegate arbitrability questions. *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 U.S. Dist. LEXIS 168370, \*7-8 (N.D. Cal. Oct. 11, 2017); *Miller*, 2016 U.S. Dist. LEXIS 179444 at \*12-13.  Yet the N.D. Cal. declined to find that incorporation of the AAA Rules warranted the conclusion that arbitrability was clearly and unmistakably delegated because several plaintiffs were "unsophisticated." *Meadows v. Dickey's Barbeque Rests., Inc.*, 144 F. Supp. 3d 1069, 1078-79 (N.D. Cal. 2015).  However, these individuals' contracts did not contain delegation clauses. *Id.* at 1077.  Regardless of Plaintiffs' "sophistication," the incorporation of the AAA Rules "is certainly a factor pointing toward a clear and unmistakable delegation of arbitrability." *Gutierrez v. FriendFinder Networks, Inc.*, No. 18-cv-05918-BLF, 2019 U.S. Dist. LEXIS 75310, \*27-28 (N.D. Cal. May 3, 2019).

10

the arbitration to obtain an independent judicial determination as to arbitrability." *Kitagawa v. World Airways, Inc.*, No. 06-00168 SOM/BMK, 2006 U.S. Dist. LEXIS 41575, *17-19 (D. Haw. June 20, 2006) (plaintiffs "briefed the arbitrability issue without seeking an initial judicial determination or reserving the question for later judicial determination"). *See also Writers Guild of Am., West, Inc. v. Sweetpea Entm't Corp.*, No. 06-55059, 255 Fed. Appx. 114, 115 (9th Cir. Nov. 1, 2007) ("[Defendants] submitted the question of arbitrability to the arbitrator to decide, and we must conclude…that they waived their right to seek a de novo judicial determination of the same issue.").

Plaintiffs have "gone too far down the slippery slope in submitting [the] dispute to arbitration," and this Court should reject their challenge to the arbitration provision. *Orion Pictures Corp.*, 946 F.2d at 725.  Plaintiffs requested the opportunity to contest the arbitration provision in the pending arbitrations.  (Lloyd Dec. ¶¶ 6, 8.)  In the Aguilera arbitration, the matter was painstakingly briefed, culminating in a 22 page order dated December 16, 2019—nearly a month before this application—denying their challenge. (*Id.*, Exs. 6-10.)  Goro also sought and received the opportunity to mount a challenge, and his motion will be fully briefed before this motion is heard.  (*Id.* ¶ 8.)  Plaintiffs could have immediately challenged the arbitration provision in court after Matco initiated the arbitrations in June 2019, but did not (though doing so would have been fruitless given the delegation provision).  Their motion should accordingly be denied on this ground.

### 3.    Collateral Estoppel Does Not Apply.

#### a.    Collateral Estoppel Is A Gateway Issue For An Arbitrator.

Plaintiffs' requested relief is also unavailable to the extent they rely on collateral estoppel.  Supreme Court precedent provides that gateway procedural questions such as estoppel are reserved for an arbitrator unless the parties otherwise agree.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002).  Since *Howsam*, two Circuit Courts have considered whether a court or an arbitrator should decide arguments regarding the application of estoppel to a petition to compel arbitration.

In *Klay v. United Healthgroup, Inc.*, the Eleventh Circuit, considering the propriety of a justiciability challenge in court arising from a plaintiff's voluntary dismissal pursuant to Rule 41, ruled that gateway questions such as justiciability and collateral estoppel are generally reserved for arbitrators.  376 F.3d 1092, 1109 (11th Cir. 2004).

In *Citigroup v. Abu Dhabi Inv. Auth.*, the Second Circuit held "that the determination of the claim-preclusive effect of a prior federal judgment confirming an arbitration award is to be left to the arbitrators."  776 F.3d 126, 131 (2d Cir. 2015).

Multiple courts have found similar questions to be reserved for the arbitrator unless explicitly excepted.  *E.g.*, *Las Vegas v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 596 (9th Cir. 2018) ("Questions of procedural arbitrability…are presumptively for the arbitrator."); *EEC, Inc. v. Baker Hughes Oilfield Ops., Inc.*, 460 Fed. Appx. 731, 735-736 (10th Cir. 2012) (decision regarding which of two arbitration clauses control was for arbitrator); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391-392 (2d Cir. 2011) (estoppel and waiver for arbitrator); *Rancho Magana/Niyip S.P.R. DE R.L. v. Apio, Inc.*, No. 08CV1773 BEN (NLS), 2009 U.S. Dist. LEXIS 142477, *4-5 (S.D. Cal. Aug. 4, 2009) ("gateway procedural disputes" such as estoppel are presumptively for arbitrator).

Plaintiffs may raise a collateral estoppel argument in the arbitrations.  This Court, however, should not consider their argument.

### b.   The Elements Of Offensive Collateral Estoppel Are Not Present And Its Application Would Be Unfair To Matco In Any Event.

Even if this Court were the proper forum in which to raise collateral estoppel, Plaintiffs' argument would still fail.  "Offensive nonmutual issue preclusion" applies if: "(1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action."  *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (citations and punctuation omitted).

The elements of collateral estoppel are not present.  The order denying Matco's *forum non conveniens* motion in *Fleming* is interlocutory, and such orders which are not immediately appealable are not "sufficiently firm to be accorded conclusive effect."  *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988); *McMillan v. Lowe's Home Ctrs., LLC*, No. 1:15-CV-00695-KJM-SMS, 2016 U.S. Dist. LEXIS 6673, *8-12 (E.D. Cal. Jan. 20, 2016) (citing *Luben Indus., Inc. v. U.S.*, 707 F.2d 1037 (9th Cir. 1983) (interlocutory memorandum was "subject to the free revision by the court on its own motion or on motion of any party at any time before judgment")).  And while the forum-selection clause was litigated in *Fleming*, the arbitration provision was not.  There, Matco argued it was improper for the court to consider the validity of the contract containing the arbitration clause rather than the validity of the forum-selection clause.  *Fleming*, 384 F. Supp. 3d at 1130-31.  Moreover, the effect of the delegation provision was never addressed in *Fleming*.  *See generally id.*; *see also In re Matco Tools Corp.*, 781 Fed. Appx. at 682-683; *In re Matco Tools Corp.*, 2020 U.S. App. LEXIS 95 at *1.  The validity of the arbitration provision was not fully, fairly or actually litigated in *Fleming*.

Regardless, applying collateral estoppel would be unfair.  *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) ("[W]here the application of [the doctrine] would be unfair to a defendant, a trial judge *should not* allow the use of collateral estoppel.") (citation and punctuation omitted).  Plaintiffs "adopt[ed] a 'wait and see' attitude in the hope that [*Fleming*] would result in a" decision favorable to them.  *Syverson*, 472 F.3d at 1079 ("wait and see" attitude is indicia of unfairness); *Collins*, 505 F.3d at 881 ("[O]ffensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.").  In March 2019, Matco filed a *forum non conveniens* motion against Plaintiffs seeking enforcement of the forum-selection clause.  (Lloyd Dec. ¶ 3.)  However, rather than oppose the motion, Plaintiffs dismissed their case without prejudice.  (*Id.*)  Then, on August 21, 2019—three months after the district

13

61183720v.1

court's ruling in *Fleming*—Plaintiffs initiated this case, which is premised upon the purported collateral estoppel effect of *Fleming*. (Dkt. No. 1.) Finally, after the Ninth Circuit denied Matco's Petition for Writ of Mandamus (*In re Matco Tools Corp.*, 781 Fed. Appx. at 683), Plaintiffs filed this application. Lying in wait enabled Plaintiffs to leverage the ruling in *Fleming* without incurring the risk of a binding adverse order. "[I]t would be unfair to…apply collateral estoppel where Plaintiffs did not risk an adverse finding in the previous action." *Paramount Pictures Corp v. Int'l Media Films, Inc*, No. CV 11-09112 SJO (AJWx), 2012 U.S. Dist. LEXIS 196281, *8 (C.D. Cal. Apr. 6, 2012).

Finally, to the extent the validity of the arbitration provision turns on the PAGA waiver in Section 12.7 and the severability provision in Section 12.12, the Ohio choice of law clause will be key. Ohio permits waivers of private attorney general claims. *E.g.*, *Love v. Crestmont Cadillac*, 8th Dist. No. 104807, 2017-Ohio-1555, 90 N.E.3d 123, ¶ 20 (8th Dist. 2017) (private attorney general claim waiver valid). But neither the N.D. Cal. nor the Ninth Circuit opined on whether California or Ohio law applied in *Fleming*; in fact, the district court declined to rule on that issue. *Fleming*, 384 F. Supp. 3d at 1133, 1136; *In re Matco Tools Corp.*, 781 Fed. Appx. at 682-683; *In re Matco Tools Corp.*, 2020 U.S. App. LEXIS 95, at *1. Collateral estoppel, therefore, would preclude litigation of a question that was not resolved in *Fleming*.

### 4.   The Arbitration Provision Is Enforceable.

Even if Plaintiffs could overcome the above obstacles, they still could not establish that the arbitration provision is unenforceable. While the Distributorship Agreements require the application of Ohio law, Plaintiffs cannot "prove a quantum of both procedural and substantive unconscionability" under either Ohio or California law. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 30 (2009); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016).

#### a.   The Arbitration Provision Is Enforceable Under Ohio Law.

Procedural unconscionability exists if the party contesting an agreement lacked a

14

61183720v.1

meaningful choice.  *Hayes*, 122 Ohio St.3d at ¶ 20.  Opening a business is not a "necessity"; Plaintiffs could have elected to pursue another endeavor.  *See Eagle v. Fred Martin Motor Co.,* 9th Dist. No. 21522, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 45 (9th Dist. 2004).  Further, Plaintiffs had the opportunity to consult an attorney and received a copy of the arbitration provision (which is set forth separately, with bold text and all capital letters in the headings) before signing the Distributorship Agreements.  (Swanson Dec., ¶¶ 3-4, Exs. 1-4.)  "[T]he fact that these [Plaintiffs] had the opportunity to read the Distributor Agreement, including the arbitration clause, dooms their claim of procedural unconscionability under Ohio law."  *Jean v. The Stanley Works*, No. 1:04CV1904, 2008 U.S. Dist. LEXIS 54578, *12 (N.D. Ohio July 14, 2008).[5]

Substantive unconscionability results when the "clauses involved are so one-sided as to oppress or unfairly surprise a party."  *Neubrander v. Dean Witter Reynolds, Inc.*, 81 Ohio App.3d 308, 312, 610 N.E.2d 1089, 1091 (9th Dist. 1992); *see Post v. Procare Automotive Serv. Sols.,* 8th Dist. Cuyahoga No. 87646, 2007-Ohio-2106, ¶ 12 (8th Dist. 2007) (citing *Orlett v. Suburban Propane*, 54 Ohio App.3d 127, 129 (12th Dist. 1989) (arbitration clause unconscionable where "party has been misled as to the 'basis of the bargain,' where a severe imbalance in bargaining power exists, or where specific contractual terms are outrageous")).  It does not exist when an out-of-state franchisee is required to arbitrate in Ohio (*Mgmt. Recruiters Intern., Inc. v. Bloor*, 129 F.3d 851, 856 (6th Cir. 1997) (compelling out of state franchisee to arbitrate in Ohio)), to bring its claims within a shorter contractual limitations period (*Jean*, 2008 U.S. Dist. LEXIS 54578 at *9 (one year contractual limitations period)), to accept a bilateral limitation on damages (*Id.*); or to share the costs of arbitration (*Id.*).  Nor is a contractual provision unconscionable because one party fails to understand the import of the clause.  *Info.*

---

[5] That Plaintiffs could have gone elsewhere to make a living also precludes a finding that the arbitration provision is a procedurally unconscionable adhesion contract.  *Cooper v. MRM Inv. Co.,* 367 F.3d 493, 501-02 (6th Cir. 2004) (employment contract with arbitration provision not procedurally unconscionable where there may have been other local employers from which plaintiff could obtain employment).

15

61183720v.1

*Leasing Corp. v. King*, 1st Dist. No. C-020830, 155 Ohio App.3d 201, 2003-Ohio-5672, 800 N.E.2d 73, ¶ 17 (1st Dist. 2003).  Here, where the arbitration provision binds the Parties to bilateral terms and conditions,[6] substantive unconscionability is not present.[7]

### b.    Unconscionability Is Absent Under California Law.

California finds only slight procedural unconscionability in arbitration clauses set forth in franchise agreements.  In *Estrada v. CleanNet USA, Inc.*, the court found that franchisees provided an agreement with bold, capitalized section headings, and, time to review the agreement and to consult a lawyer, were subjected to "minimal" procedural unconscionability even though the agreement had qualities of adhesion contracts.  No. C 14-01785 JSW, 2015 U.S. Dist. LEXIS 22403, *5-7 (N.D. Cal. Feb. 24, 2015).

A similar result occurs under California employment law, which is inapposite but cited by Plaintiffs.  In that context, a non-negotiable arbitration agreement that is a condition of employment may be a procedurally unconscionable "contract of adhesion," but if "there is no other indication of oppression or surprise," then "the agreement will be enforceable unless the degree of substantive unconscionability is high."  *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (Cal. Ct. App. 2013) (punctuation omitted).  Plaintiffs do not argue that they were oppressed or surprised by the arbitration provision.  At most, they have shown minimal procedural unconscionability.

Substantive unconscionability relates to whether the terms are "overly harsh" or "generate one-sided results."  *Estrada*, 2015 U.S. Dist. LEXIS 22403 at *9.  *Tompkins* demonstrates the futility of many of Plaintiffs' arguments.  There, the court rejected the argument that the arbitration agreement was unconscionable because it: excluded claims "more likely" to be brought by the defendant, including intellectual property claims (*id.*

---

[6]  According to Article 12: (1) all Parties must submit disputes to arbitration; (2) all Parties must keep an award confidential; (3) all Parties have the same notice of dispute requirements and cure periods; (4) all Parties have identical limitations provisions, (5) all Parties have the same exceptions to arbitration, limitations on damages, and ability to obtain injunctive relief.  (Swanson Dec. Exs. 2 & 4 at § 12.)

[7]  Ohio does not treat franchise agreements as adhesion contracts.  *Petland, Inc. v. Hendrix*, No. 2:04-CV-224, 2004 U.S. Dist. LEXIS, *12 (S.D. Ohio Sept. 14, 2004).

at 1031); shortened the statute of limitations to one year (*id.* at 1032);[8] and contained a unilateral modification clause and a forum-selection clause (*id.* at 1029, 1033).[9] *Poublon v. C.H. Robinson Co.* held that a confidentiality provision like the one here was not unconscionable, and rejected that plaintiff's reliance on *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1002 (9th Cir. 2010), upon which Plaintiffs rely.  846 F.3d 1251, 1260 (9th Cir. 2017).  *See also Polimaster Ltd. v. RAE Sys.*, 623 F.3d 832, 837 (9th Cir. 2010) (requiring arbitration "at the location of the defendant's principal place of business" is "presumptively enforceable").  *Estrada* rejects the notion that a limitation of damages provision is unconscionable in the franchise context and, in any event, that provision is severable.  2015 U.S. Dist. LEXIS 22403 at *9-10.  And bilateral pre-dispute resolution provisions like the Ombudsman provision are not unconscionable.  *Serpa v. Calif. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (Cal. Ct. App. 2013).

### c.    The PAGA Waiver Is Severable.

Plaintiffs contort the Distributorship Agreements by arguing that the PAGA waiver in Section 12.7 nullifies the agreement to arbitrate.[10]  According to their interpretation, because California law[11] would invalidate the PAGA waiver, the "blow up" provision in Section 12.12 invalidates the entire arbitration provision.  Plaintiffs' argument is flawed.

---

[8] Plaintiffs argue the limitations period provision is unconscionable because it does not provide extensions beyond 18 months under a "continuing violations" theory.  But the Distributorship Agreements are franchise, not employment, contracts, and the "continuing violations" doctrine (which applies to discrimination and harassment claims) is irrelevant.  *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995).

[9] "Mere inconvenience or additional expense" does not make a forum unreasonable.  *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 96 (Cal. 1976) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 16–18 (1972)).  Moreover, while Mr. and Mrs. Aguilera claim they have incurred arbitration fees in the arbitration initiated by Matco, they omit the fact that Matco covered these fees (without prejudice to later seeking reimbursement of them).  (Lloyd Dec. ¶ 7.)

[10] The Ninth Circuit's unpublished decision concerning the effect of the PAGA waiver on the enforceability of the arbitration provision in *Fleming* is not binding because collateral estoppel does not apply.  *See* Ninth Circuit Rule 36-3(a).

[11] *See Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348 (Cal. 2014); *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 429 (9th Cir. 2015).  The Ninth Circuit is reconsidering *Sakkab* in light of *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018).  *See Echevarria v. Aerotek, Inc.*, No. 16-cv-04041-BLF, 2019 U.S. Dist. LEXIS 118470 (N.D. Cal. July 16, 2019) & *Echevarria v. Aerotek, Inc.*, 9th Cir. Case No. 19-16275.

17

1    First, Ohio law, which controls, permits private attorney general claim waivers.

2    *See, e.g.*, *Love*, 90 N.E.3d 123 at ¶ 20.  Section 12.7 is thus valid.

3    Second, Respondents advance a nonsensical interpretation of Section 12.12.  The

4    clear intent of Section 12.12 is to exclude from **arbitration** private attorney general

5    claims if an arbitrator determines they cannot be waived:

6    **12.12 <u>Severability</u>.**  It is the desire and intent of the parties to this
     Agreement that the provisions of this Article be enforced to the fullest extent
7    permissible under the laws and public policy applied in each jurisdiction in
     which enforcement is sought.  Accordingly, if any part of this Article is
8    adjudicated to be invalid or unenforceable, then this Article will be deemed
     amended to delete that portion thus adjudicated to be invalid or
9    unenforceable, such deletion to apply only with respect to the operation of
     this Article in the particular jurisdiction in which the adjudication is made.
10   Further, to the extent any provision of this Article is deemed unenforceable
     by virtue of its scope, the parties to this Agreement agree that the same will,
11   nevertheless be enforceable to the fullest extent permissible under the laws
     and public policies applied in such jurisdiction where enforcement is sought,
12   and the scope in such a case will be determined by Arbitration as provided
     herein, provided, however, that if the provision prohibiting . . . private
13   attorney general arbitration is deemed invalid, then the provision requiring
     arbitration of breaches between the parties shall be null and void and there
14   shall be no obligation to arbitrate any such breaches.

15   (Swanson Dec., Exs. 2 & 4 at § 12.12.)

16   The clauses preceding the words "provided however" give the arbitrator the power

17   to determine whether any provision is invalid, and, if so, to enforce all other provisions to

18   the fullest extent possible.  If the provision stopped there, its terms would require an

19   arbitrator to strike an invalid PAGA **waiver**, making remaining PAGA claims subject to

20   arbitration under the broadly worded delegation provision.  To avoid that result, the

21   Parties included the words after "provided, however" to instruct the arbitrator to instead

22   sever PAGA claims, so as to provide for arbitration of all claims except PAGA claims.

23   Thus, a proper interpretation would not preclude arbitration—rather, any PAGA claims

24   would be excluded from arbitration.  *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257,

25   1265 (9th Cir. 2006) ("[Unconscionable provisions] may, however, be severed from any

26   valid and enforceable provisions, even those also contained within the arbitration

27   provision); *Corp. Express Office Prods., Inc. v. Can Guelpen*, No. C 02-04588 WHA,

28

18

2002 U.S. Dist. LEXIS 27642, at *6 (N.D. Cal. Dec. 12, 2002) ("No contract provision should be interpreted in a manner that would render other provisions meaningless.").

### 5.   The Forum-Selection Clause Is Enforceable.

To overcome the presumption that a forum-selection clause is valid, a plaintiff must show: "(1) that the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) that the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; or (3) that enforcement would contravene a strong public policy of the forum in which suit is brought." *Brady Mktg. Co. v. KAI USA, Ltd.*, No. 16-cv-02854-RS, 2016 U.S. Dist. LEXIS 115877, *4-5 (N.D. Cal. Aug. 29, 2016) (punctuation omitted). Moreover, the validity of a forum-selection clause does not depend upon the validity of the contract containing it. *Autoridad de Energia ElEctrica v. Vitol S.A.*, 859 F.3d 140, 147-148 (1st Cir. 2017) (enforcing forum-selection clauses in purportedly void contracts); *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (rejecting argument that forum-selection clauses were void because contracts were unenforceable); *Goldman v. U.S. Transp. & Logistics, LLC*, No. 17-cv-00691-BAS-NLS, 2017 U.S. Dist. LEXIS 210423, *9-10 (S.D. Cal. Dec. 20, 2017) ("courts have rejected similar challenges made to an agreement as a whole").[12]

Where a forum-selection clause is mandatory, "the plaintiff's choice of forum merits no weight." *Atl. Marine Constr. Co. v. Dist. Court*, 134 S. Ct. 568, 582 (2013). Courts "should not consider the parties' private interests because such considerations were waived." *Balducci v. Congo Ltd.*, No. 17-cv-04062-KAW, 2017 U.S. Dist. LEXIS 154523, *20 (N.D. Cal. Sept. 21, 2017). Courts instead consider public interest factors: "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Monastiero v. appMobi, Inc.,* No. C 13-05711 SI, 2014 U.S. Dist. LEXIS 67202, *11-14 (N.D. Cal. May 15, 2014).

---

[12] The Ninth Circuit's unpublished decision in *Fleming* is not binding because collateral estoppel does not apply. *See* Ninth Circuit Rule 36-3(a).

### a.   The Clause Is Free From Fraud Or Overreaching.

A party claiming a forum-selection clause is the product of fraud or overreaching must demonstrate that the clause, and not the contract as a whole, was obtained through illicit means. *Roberts v. C.R. England, Inc.*, 827 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011). The parties' positions in terms of bargaining power are irrelevant, because "a differential in power or education on a non-negotiated contract will not vitiate a forum-selection clause." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)). There is no evidence of fraud or overreaching here.

### b.   Plaintiffs Will Receive Their Day In Court.

"[W]hen a plaintiff agrees by contract to bring suit only in a specified forum[,] the plaintiff…waive[s] the right to challenge the preselected forum as inconvenient or less convenient for [his or her self] or [his or her] witnesses." *Atl. Marine Constr. Co.*, 134 S. Ct. at 581-582. Expense and inconvenience cannot invalidate a forum-selection clause. *Balducci*, 2017 U.S. Dist. LEXIS 154523 at *11-12 (expense and inconvenience inadequate to invalidate Colorado forum-selection clause). Absent grave hardship, Plaintiffs will not be deprived of their day in court. *Id.*

### c.   Section 20040.5 And Labor Code § 925 Are Preempted.

Plaintiffs do not identify any public policies the forum-selection clause contravenes.[13] Section 20040.5 is preempted by the FAA. *Bradley*, 275 F.3d at 892 (Section 20040.5 is not generally applicable to "any contract"). Labor Code section 925, which permits employees to void forum-selection clauses in employment contracts (even if applicable to franchise agreements), is also preempted. Like Section 20040.5, Section 925 applies to only one type of contract, an employment contract. Cal. Lab. Code § 925. Accordingly, because Section 925 does not apply to "any contract," it is preempted. *See*

---

[13] The FAA applies because Plaintiffs' and Matco's dealings "involve commerce." *See* 9 U.S.C. § 2; *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274 (1995) ("[T]he word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full."). (*See also* Swanson Dec., Exs. 2 & 4 at § 13.3.)

20

9 U.S.C. § 2; *Bradley*, 275 F.3d at 890, 892; *Bell Prods. v. Hosp. Bldg. & Equip. Co.*, No. 16-cv-04515-JSC, 2017 U.S. Dist. LEXIS 9183, *12-13 (N.D. Cal. Jan. 23, 2017) (Cal. Code Civ. Proc. § 410.42(a)(1) preempted pursuant to *Bradley*).

### d.   The Public Interest Factors Are Neutral.

Because the forum-selection clause is mandatory,[14] Plaintiffs' choice of forum is afforded no weight, and the Court may only consider public interest factors in deciding whether to enforce it. *Atl. Marine Constr. Co.*, 134 S. Ct. at 582.

First, the docket congestion factor is neutral. As of September 30, 2019, judges had an average of 623 pending cases in the N.D. Ohio, and the median time to trial for civil cases was 21.3 months. (Request for Judicial Notice, Ex. A.) By comparison, judges in this Court (Plaintiffs' presumptively preferred forum) had an average of 462 pending cases, and the median time to trial for civil cases was 27.7 months. (*Id.*)

The local interest factor is also neutral. While California has an interest given that Plaintiffs are residents, Ohio has an equivalent interest given that Matco is headquartered there, and, negotiated contracts containing Ohio choice of law and forum-selection clauses. (Swanson Dec., Exs. 2 & 4 at §§ 12.10 and 13.3.)

Finally, this Court and the N.D. Ohio are equally capable of applying California or Ohio law. *Balducci*, 2017 U.S. Dist. LEXIS 154523 at *23 ("federal judges routinely apply the law of a State other than the State in which they sit").

As the public interest factors are neutral, the forum-selection clause is enforceable.

### 6.   Restitution Is Unavailable As A Matter Of Law.

Plaintiffs' claim for restitution fails. "A restitution order [requires] that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 156 (Cal. Ct. App. 2015) (citation and punctuation omitted). The only

---

[14] *S. Cty. Prof'l Park, Ltd. v. Orchard Supply Co. LLC*, No. 5:14-cv-02348-PSG, 2014 U.S. Dist. LEXIS 100064, *8 (N.D. Cal. July 21, 2014) ("Under Ninth Circuit authority, the phrase 'shall be brought' in a forum selection clause makes the clause mandatory.").

expenditures alleged are litigation costs Plaintiffs did not pay to Matco.  (Dkt. No. 3 ¶¶ 62, 70; Lloyd Dec. ¶ 7.)  Restitution is not available.  *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 456 (Cal. Ct. App. 2005) ("[P]laintiff fails to cite any authority that a UCL plaintiff may recover money from a defendant who never received it[.]").

### C.   Plaintiffs Fail To Identify Any Imminent Irreparable Harm.

#### 1.   Plaintiffs' Inexplicable Delay Should Defeat Their Motion.

Injunctive relief should be denied due to Plaintiffs' delay.  "A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief." *Lydo Enters. Inc. v. Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984).  Delay undercuts a claim of irreparable harm.  *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (affirming denial of relief where plaintiff waited five months before seeking injunction). And, delay in and of itself may be "sufficient to weigh against a finding of irreparable harm."  *Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1113 (S.D. Cal. 2014). Such is the case here.  Matco filed its Petition to Compel Arbitration in March 2019, and initiated the arbitrations in June 2019.  (Lloyd Dec. ¶¶ 4, 5.)  Yet Plaintiffs waited until December 27, 2019—*after* the Petition to Compel Arbitration was fully briefed, *after* an arbitrator deemed Mr. and Mrs. Aguilera's arbitration provision enforceable, and *after* the parties scheduled the preliminary hearing in the arbitration involving Goro—to seek an injunction.  If Plaintiffs faced imminent harm, surely they would have acted sooner.

#### 2.   Plaintiffs Identify Speculative Harm.

Plaintiffs must "proffer evidence sufficient to establish a likelihood of irreparable harm."  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013).  "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  However, the majority of the purported harm identified by Plaintiffs is entirely speculative.

First, under no circumstances will Plaintiffs will be "required" to arbitrate their

61183720v.1

1    claims in Ohio.  As Plaintiffs note, "the FAA does not compel a plaintiff to pursue

2    arbitration rather than not pursuing the claims at all."  *Capon v. Ladenburg, Thalman Co.,*

3    *Inc.*, 92 Fed. Appx. 400, 402 (9th Cir. 2004).  And in any event, the N.D. Ohio has not

4    ruled on Matco's Petition to Compel Arbitration.[15]

5          Second, there is no guarantee the arbitrator in the arbitration involving Mr. Goro

6    will uphold the arbitration provision.  Indeed, Mr. Goro is challenging its enforceability.

7          Third, Plaintiffs speculate that their rights under California law will be foreclosed,

8    presumptively on account of the Ohio choice of law clause.  Even if application of Ohio

9    law were "irreparable harm"—it is not, as explained below—it is uncertain whether the

10   N.D. Ohio or the arbitrator in the Goro arbitration will apply Ohio law.

### 3.    Plaintiffs Have Adequate Legal Remedies.

11

12         Plaintiffs must also establish that "remedies available at law, such as monetary

13   damages, are inadequate."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

14   (2006); *see also Lydo Enters. Inc. v. Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (if

15   money damages or other relief can adequately compensate the plaintiff, irreparable injury

16   probably will not follow the denial of a preliminary injunction).

17         Plaintiffs have adequate legal remedies with respect to Matco's Petition to Compel

18   Arbitration.  They can appeal the N.D. Ohio's rulings.  *Liviz v. Howard*, No. 19-cv-

19   10096-PJB, 2019 U.S. Dist. LEXIS 36440, at *10 (D. Mass Mar. 4, 2019) ("A party that

20   has an opportunity to challenge a ruling made in a concurrent federal proceeding through

21   appeal or application for an extraordinary writ has an adequate remedy at law.").

22   Moreover, Plaintiffs can present a collateral estoppel argument on account of the *Fleming*

23   case, and have in fact done so (although the argument is fruitless in light of the delegation

24   provision).  *Guzy v. Guzy*, No. 3:19-CV-00129-RCJ-CBC, 2019 U.S. Dist. LEXIS 51874,

25   *16-17 (D. Nev. Mar. 26, 2019) (request for injunction denied; plaintiff had the ability to

26

27   ────────────────
     [15] Plaintiffs' suggestion that there is no case or controversy because they dismissed their
28   claims is a gateway question for an arbitrator.  *Klay*, 376 F.3d at 1109 (justiciability
     generally for arbitrator).  It does not support their likelihood of success argument.

raise res judicata defense).  Recognizing this, Plaintiffs hang their hat on litigation costs as the purported harm.  However, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 736 n.20 (9th Cir. 2017) (rejecting notion that injunctive relief can be based on expense of defending against supposedly meritless claims) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1 (1974) (punctuation omitted)).  Moreover if, Matco's Petition is granted, or, is deemed to have reasonable grounds, "it is difficult to see why [Plaintiffs are] harmed—and irreparably so—by defending non-frivolous claims."  *Guzy*, 2019 U.S. Dist. LEXIS 51874 at *13-14.

With respect to the pending arbitrations, courts in this Circuit agree that a plaintiff who is required to participate in an arbitration in which he or she did not agree to participate lacks an adequate legal remedy.  However, Plaintiffs agreed to delegate questions of arbitrability to an arbitrator, and, because the arbitration agreements are enforceable, they can point to no injury arising from participating in arbitration.

Finally, Plaintiffs cite foreclosure from the protections of California law as harm.  Two of the California laws they cite (Sections 20040.5 and 925) are preempted by the FAA.  The other law cited, Cal. Civil Code section 3513, permits Plaintiffs to waive laws "intended for [their] benefit" as opposed to laws "established for a public reason."  Regardless, application of Ohio law would not cause "irreparable harm" simply because California law may differ.  That position renders conflicts of law jurisprudence meaningless.  *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 740 (6th Cir. 1999) ("[O]therwise[,] foreign law could automatically be ignored[.]"); Restatement (Second) of Conflicts of Laws, § 187(2), cmt. g ("[t]he forum will not refrain from applying the chosen law merely because this would lead to a different result").

### D.  The Low Likelihood Of Success On The Merits Requires Plaintiffs To Carry A Heavy Burden To Show That The Public Interest And The Balance Of The Hardships Weigh In Their Favor.

"[T]he less certain the district court is of the likelihood of success on the merits,

24

the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). Plaintiffs' burden is high given the futility of their arguments. They can identify no harm arising from the N.D. Ohio action. *Guzy*, 2019 U.S. Dist. LEXIS 51874 at *13-14 ("it is difficult to see why [Plaintiffs are] harmed— and irreparably so—by defending non-frivolous claims"). The balance of the equities thus tips sharply in Matco's favor. What is more, enjoining the litigation would damage the public interest in maintaining comity among the courts. *Bergh*, 535 F.2d at 507.

With respect to the arbitrations, Matco acknowledges the balance of hardships and impact on the public interest will turn on whether the arbitration provision is enforceable. However, the Court should reject Plaintiffs' argument in light of the delegation clause and their failure to establish that the arbitration provision is unconscionable.

## V.    CONCLUSION

For all the foregoing reasons, Matco requests that the Court deny Plaintiffs' Ex Parte Application for a Temporary Restraining Order.

DATED:  January 17, 2020                    Respectfully submitted,

SEYFARTH SHAW LLP

By: *s/Eric M. Lloyd*
    Christian J. Rowley
    Eric M. Lloyd
    Matthew A. Goodin

Attorneys for Defendant
MATCO TOOLS CORPORATION

DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION FOR TRO
CASE NO. 3:19-CV-01576-AJB-AHG

61183720v.1