**NICHOLAS & TOMASEVIC, LLP**
   Craig M. Nicholas (SBN 178444)
   Alex Tomasevic (SBN 245598)
   Shaun Markley (SBN 291785)
   Ethan T. Litney (SBN 295603)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: elitney@nicholaslaw.org

Attorneys for Plaintiffs,
EMANUEL AGUILRA, ROCIO AGUILERA,
and SIMON GORO

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL AGUILERA, an individual; ROCIO AGUILERA, an individual; and SIMON GORO, an individual,<br><br>               Plaintiffs,<br><br>    vs.<br><br>MATCO TOOLS CORPORATION, a Delaware corporation,<br><br>               Defendant. | Case No.  3:19-cv-01576-AJB-AGS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER OR IN THE ALTERNATIVE, FOR AN ORDER SHORTENING TIME ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Courtroom: 4A<br>Judge:    Hon. Anthony J. Battaglia |

---

PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE FOR TRO, OR IN THE ALTERNATIVE, FOR AN OST ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## I. ARGUMENT IN REPLY

"A plaintiff seeking [injunctive relief] must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 19 (2008). Alternatively, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff" can support issuance of a injunctive relief, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *City and County of San Francisco v. U.S. Citizenship and Immig. Services*, 944 F.3d 773, 789 (9th Cir. 2019). Under either test, Plaintiffs' Application for a Temporary Restraining Order ("TRO") should be granted.

As described below, Defendant Matco Tools Corporation's ("Matco") Opposition to Plaintiffs' TRO ("Opposition") fails to meaningfully contest that Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips sharply in Plaintiffs' favor, or that an injunction is in the public interest. Instead, Matco's Opposition focuses heavily on its arguments to success on the merits.

Yet Matco cannot escape the simple fact that both the Northern District of California and the Ninth Circuit Court of Appeals have held that Matco's arbitration agreement is *void* and unenforceable under California law, which, in turn, renders Matco's Ohio forum selection and Ohio choice of law clauses unenforceable as well. As Plaintiffs raise serious questions going to the merits, and demonstrate their likelihood of success, the Court should issue Plaintiffs' requested TRO.

### A. Plaintiffs Likelihood of Suffering Imminent Irreparable Harm Vastly Outweighs Any Hardship Faced By Matco

Matco's Opposition argues that Plaintiffs fail to identify any imminent irreparable harm because: (1) Plaintiffs delayed in filing the TRO; (2) Plaintiffs

identify speculative harm; and (3) Plaintiffs have adequate legal remedies. Matco's contentions lack merit, and are self-defeating. Plaintiffs have plainly demonstrated a high likelihood of imminent irreparable injury.

### 1. Plaintiffs Did Not Unduly Delay Before Filing the TRO, And In Any Case, Delay Does Not Warrant Denial of the TRO

The Ninth Circuit has long been unwilling to deny requests for injunctive relief on the basis of delay. "Usually, delay is but a single factor to consider in evaluating irreparable injury; courts are 'loath to withhold relief solely on the ground." *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (*citing Lydo Enters, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984)). Further, "[d]elay is not particularly probative in the context of ongoing, worsening injuries" that occur over a period of time and having a cumulative impact. *Id.* Indeed, where delay is explained by a credible case of impending and aggravated irreparable harm, the significance of any such delay "may become so small as to disappear." *Id.* at 991.

Here, as discussed in Plaintiffs' TRO, recent developments in the Ohio arbitration actions warrant issuance of a TRO (or, in the alternative, an expedited preliminary injunction hearing). These developments are causing ongoing worsening injury to Plaintiffs in that they now have to actively litigate two unlawful arbitration actions in Ohio, an injury which Matco's Opposition acknowledges is irreparable. *See* Opposition, p. 24:10-14; *See Maryland Case Co. v. Realty Advisory Bd. On Labor Relations*, 107 F.3d 979 (2d Cir. 1997) (Affirming preliminary injunction enjoining arbitration action and finding that time and resources expended in forced arbitration of non-arbitrable claims constituted irreparable injury). Plaintiffs' delay, if any, should be given no weight in evaluating Plaintiffs' TRO.

Further, any suggestion by Matco that Plaintiffs have unduly delayed filing the TRO is severely undercut by Matco's own arguments. On the one hand, Matco claims that "[a]ny 'harm' purportedly arising from th[e] [Ohio] proceedings was foreseeable when they were initiated," and one the other, Matco argues that any

possible harm arising from the Ohio proceedings is "speculative" in that the Goro arbitration proceeding and the Northern District of Ohio may rule in Plaintiffs' favor. *Compare* Opposition, p. 7 *with* Opposition, p. 23. This juxtaposition cannot be reconciled; Matco cannot have it both ways. By Matco's own logic, either Plaintiffs' harm was recently actualized when the arbitrator in the Aguilera proceeding ruled in Matco's favor, or Plaintiffs' harms have been imminent upon the initiation of the Ohio proceedings. In the former case, Matco must forfeit its argument as to delay, and in the latter, Matco must forfeit its argument as to the speculative nature of certain of Plaintiffs' claimed harms.

### 2. Plaintiffs' Harm is Not Speculative

Matco argues that several of Plaintiffs' claimed harms as either "speculative" or simply not harms at all; these arguments lack merit. Plaintiffs are now being forced to actively litigate an additional arbitration action in Ohio. Further, the fact that certain rulings affecting Plaintiffs' rights remain pending does not in any way render the harm *unlikely*. As noted by Matco, the arbitrator in the Aguilera action recently denied the Aguilera Plaintiffs' request to contest the enforceability of the arbitration provision, refusing to apply California law. Opposition, p. 11. This alone evinces a likelihood that the arbitrator in the Goro arbitration will rule similarly, which would result in imminent irreparable harm.

Further, contrary to Matco's claims, application of an Ohio choice of law or forum selection clause in contravention of California public policy, and foreclosing Plaintiffs' rights under California law, does constitute irreparable harm. *See* Labor Code § 925; Bus. & Prof. Code § 20040.5. Indeed, in *Lyon v. Neustar*, *Inc.*, the Eastern District of California found that frustration of a party's rights under Labor Code section 925 by forcing arbitration outside the state of California constituted irreparable harm. *Lyon v. Neustar*, *Inc.*, No. 2-19-cv-00371-KJM-KJN, 2019 WL 1978802, at *8 (E.D. Cal. May 3, 2019) ("[Plaintiff] would suffer irreparable harm if subjected to litigation or arbitration in Virginia. His rights under California law—

he has invoked them in full—would be frustrated under 925 at least."). The same principles apply here under Labor Code section 925[1] and Business & Professions Code section 20040.5.

Further, Matco claims that harm arising from its petition to compel arbitration is speculative because "under no circumstances will Plaintiffs be 'required' to arbitrate their claims in Ohio." Opposition at p. 23. Yet, in the very next sentence, in a footnote, Matco suggests entirely the opposition, stating that "[whether] there is no case or controversy because [Plaintiffs] dismissed their claims is a gateway question for an arbitrator." *Id.*, at n. 15.

### 3. Plaintiffs Lack Adequate Legal Remedies

Matco concedes that under Ninth Circuit precedent, Plaintiffs lack an adequate legal remedy to litigating Ohio arbitration proceedings. Opposition, p. 24. However, Matco attempts to sidestep this issue by claiming that Plaintiffs "agreement" to arbitrate their claims nullifies any harm caused by participation in the Ohio arbitration actions. Opposition at 24. This argument simply puts the cart before the horse, as the Northern District of California and the Ninth Circuit have both reviewed Matco's Distributorship agreement and found that "Matco and Fleming did not agree to arbitrate their dispute under the plain terms of the contract." *See Fleming v. Matco Tools Corporation*, 384 F.Supp.3d 1124, 1131-1137 (N.D. Cal. 2019); *In re Matco Tools Corp.*, 781 Fed.Appx. 681, 682 (9th Cir. Oct. 25, 2019). Therefore, such an argument cannot form the basis of denying Plaintiffs' requested relief.

---

[1] Plaintiffs maintain that, in addition to being franchisees, they were employees of Matco under the "ABC Test" articulated by the California Supreme Court in *Dynamex Operations Inc. v. Superior Court,* 4 Cal.5th 903, 950 (Cal. 2018). The Ninth Circuit has recently reiterated that there is nothing "special" about "the franchise relationship" that prevents franchisees such as Plaintiffs being classified as employees under the ABC Test. *Vasquez v. Jan-Pro Int'l., Inc.* 2019 WL 4648399 (9th Cir. Sept. 24, 2019) (*citing and incorporating Vasquez v. Jan-Pro Int'l Inc.,* 923 F.3d 575 (9th Cir. 2019)). Therefore, the protections under Labor Code § 925 and Business & Professions Code § 20040.5 both apply to the Distributor Agreement.

In addition, as described above in section A.2., courts in this Circuit have found that the foreclosure from the protections of California law are indeed a harm. *Lyon*, supra, 2019 WL 1978802, at *8. Matco did not and cannot argue that this harm has an adequate legal remedy.[2]

### B.   The Balance of the Equities Sharply Tips in Plaintiffs' Favor

Matco essentially concedes the balance of the equities sharply tips in Plaintiffs' favor by failing to identify *any* hardship it would face if Plaintiffs' TRO were granted. As a preliminary matter, the balance of hardships will generally tip to Plaintiffs where, as here, the harm the plaintiff faces without injunctive relief is permanent, but the harm the defendant faces is temporary (in this case, extremely temporary). *See League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F3d 755, 765 (9th Cir. 2014). The proper measure of Matco's harm should be limited to only to the duration of Plaintiffs' TRO. *Id.* at 765-766. Here, Matco's harm is nonexistent both in its Opposition and in fact.

Further, in assessing the relative hardships to each party, courts must consider the impact the injunctive relief may have on the respective parties, given their relative size and strength. Here, Matco is a corporation with headquarters in Ohio and operations nationwide. The actions Plaintiffs seek to enjoin consist of an attempt by Matco to force Plaintiffs to arbitrate *their own claims*, and two arbitration actions where Matco seeks merely $115,116 between both actions.[3] Delaying Matco's litigation of these actions by several weeks is not likely to put them out of business, or even affect them at all.

By contrast, Plaintiff Goro and his wife raise two children while working

---

[2] Even where an ostensible legal remedy exists, it may be inadequate if there is a risk of "numerous suits between the same parties, involving the same issue of law or fact," and such a risk provides an independent rational for granting injunctive relief. *See National Private Truck Council, Inc. v. Oklahoma Tax Com'n*, 515 U.S. 582, 591, n.6 (citing Matthews v. Rodgers, 284 U.S. 521, 530 (1932); *Wilkerson v. Sullivan*, 727 F.Supp. 925, 936 (E.D. Pa. 1989). This is just such a situation.

[3] Plaintiffs do not concede in any way that they owe Matco its prayed-for relief.

seven days a week. (Goro Decl. in support of TRO, ¶ 6.) Similarly, the Aguilera Plaintiffs raise two toddlers while both working full time. (Aguilera Decl. in support of TRO, ¶ 6.) This is simply a case of David and Goliath. As discussed in Plaintiffs' TRO and above, Plaintiffs have demonstrated a strong likelihood of suffering imminent irreparable harm. The balance of the equities sharply and unequivocally tips in Plaintiffs' favor.

Finally, courts in this Circuit have found that "[in terms of balancing the equities, [] California's strong interest in protecting its employees in certain respects is an equitable consideration that weighs in [a plaintiff's] favor." *Lyon*, *supra*, 2019 WL 1978802, at *8; *see* Lab. Code § 925. This principle equally applies to California strong interest in protecting its franchisees. *See* Bus. & Prof. Code § 20040.5. These California interests tip the balance of the equities in Plaintiffs' favor even more sharply.

### C. Plaintiffs' Requested TRO Is In The Public Interest

Where a party seeks injunctive relief to enjoin legal proceedings predicated upon a contract that runs afoul of a California statute expressing a strong California public policy, California's public interest weighs in support of such relief. *Lyon*, *supra*, 2019 WL 1978802, at *9. In *Lyon*, the Eastern District of California held that: "In [Labor Code] Section 925, California expresses a strong public policy to protect employees from litigating labor disputes outside of their home state … any contract provision that runs afoul of Section 925 is contrary to California's strong public interest in protecting its employees. On that ground alone, the public policy interests relevant here weight in support [enjoining out-of-state arbitration]." *Id.* The same public policy is at issue here weighs in favor of enjoining the Ohio actions. *See* Labor Code § 925(a)(1).[4] Similarly, The Ninth Circuit has previously found that section

---

[4] Further, as Matco seeks not only to require Plaintiffs to litigate in Ohio, but to "[d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California," California public policy weighs even stronger of favor of granting Plaintiffs' TRO. *See* Labor Code § 925(a)(2).

20040.5 "expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). This further demonstrates that issuance of Plaintiffs' TRO is in the public interest.

Matco's arguments to the contrary predicated on judicial comity cannot overcome the strong public interest in favor of issuing injunctive relief. The principle of judicial comity actually requires that Matco's Ohio arbitration be enjoined to "avoid placing an unnecessary burden on the judiciary, and to avoid the embarrassment" of judgments conflicting with the Northern District's and Ninth Circuit's decision in *Fleming*. *See Wheat v. California*, No. 11-CV-2026, 2013 WL 450370, at *6 (N.D. Cal. Feb. 5, 2013). It is Matco's insistence that its various actions against Plaintiffs proceed inexorably absent any showing of prejudice or harm constitutes an unnecessary burden on the judiciary.

### D. Plaintiffs are Likely to Succeed on the Merits

Matco argues that "[Plaintiffs'] low likelihood of success on the merits requires Plaintiffs to carry a heavy burden to show that the public interest and the balance of the hardships weigh in their favor." Opposition, p. 24. Even assuming *arguendo* that this were true, Plaintiffs have clearly carried that burden. Matco's critique of Plaintiffs' delay and harm lack merit and are contradictory; Matco's statement that the balance of the equities tips sharply in its favor is wholly unsupported by any actual claim of hardship, and Matco's public interest argument is threadbare. For these reasons, Plaintiffs' TRO should be granted.

However, as discussed in detail in Plaintiffs' TRO (pp. 8-22), Plaintiffs have also demonstrated a strong likelihood of success on the merits, as the purported arbitration agreement, forum selection clause, and choice of law clause in Matco's Distributorship Agreement are all unenforceable under California law.

### 1. Matco Has Already Placed Its Arbitration Agreement Directly At Issue, Not Merely Its Purported Delegation Clause

Much of Matco's Opposition is predicated on the argument that Plaintiffs' Distributorship Agreements contained enforceable delegation clauses based on the language of section 12.1. However, Matco has already placed its arbitration agreement directly at issue in the proceedings Plaintiffs seek to enjoin.

Matco petitioned the Northern District of Ohio to compel arbitration of Plaintiffs' dismissed claims arguing that its arbitration provision is "valid and enforceable," encompassing all of the claims alleged in Plaintiffs' since-dismissed California lawsuit, and to require an arbitration venue in Ohio. (*See* Litney Decl., Exs. E, F.). Thus, the "written provision . . . to settle by arbitration a controversy," (9 U.S.C. § 2) that Matco sought to enforce was its arbitration agreement, not its delegation clause. Matco did not ask the Court to enforce its delegation provision.

The Supreme Court's opinion in *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) carefully delineates between "challenges [to] the validity under [FAA] § 2 of the precise agreement to arbitrate at issue" and more specific challenges to "the delegation provision." The Supreme Court's holding recognizes that, if challenged, federal courts must consider the validity of the agreement to arbitrate before ordering compliance with a purported arbitration agreement. *Id.* at 71. However, because *Rent-A-Center* more narrowly sought "to enforce the [] provision [delegating] resolution of [the] controversy to the arbitrator," the more limited "question before [the Court], then, is whether the delegation provision is valid under § 2." *Id.* at 68-69.

### 2. Plaintiffs' Distributorship Agreements Do Not Contain An Enforceable Delegation Clause

In any event, Matco's purported delegation clause is unenforceable. "A delegation clause is enforceable when it manifests a clear and unmistakable agreement to arbitrate arbitrability, and is not invalid as a matter of law." In pertinent

---

8
PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE FOR TRO, OR IN THE ALTERNATIVE, FOR AN OST ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

part, Matco's purported delegation clause states: "all … disputes and controversies … arising from or related to the Agreement … will be determined exclusively by binding arbitration." (Opposition, p. 9; Swanson Decl., Exs. 2 & 4 at ¶ 12.1.) This language does not manifest a clear and unmistakable delegation of the issue of arbitrability to the arbitrator, especially in a dense 36-page contract. (*See* Swanson Decl., Exs. 2 & 4.) It is telling that Matco's chosen examples of decisions approving of "similar" language showing a clear and unmistakable agreement include terminology such as "interpretation, applicability, enforceability, or formation of this Agreement" and "interpretation or application of this Agreement." *See Brock v. Copart of Washington, Inc.,* No. 3:18-CV-02012-BR, 2019 WL 959591, at *2 (D. Or. Feb. 27, 2019); *Dvorsky v. Axis Glob. Sys., LLC,* No. CV-17-422 DMG (AJWx), 2017 WL 7079459, at *2 (C.D. Cal. June 15, 2017). It is because such specific language is necessary to evidence the requisite "clear and unmistakable intent."

      Matco's discussion of the incorporation of American Arbitration Association rules is equally unavailing. The "majority of the district courts in the Ninth Circuit" have rejected Matco's arguments, and found that unsophisticated parties, such as Plaintiffs, cannot be held to have delegated the issue of arbitrability merely due to incorporation of the AAA rules. *Eiess v. USAA F.S.B.*, 404 F.Supp.3d 1240, 1253 (N.D. Cal. 2019) ("The Court agrees with the majority of district courts in the Ninth Circuit … For an unsophisticated plaintiff to discover she had agreed to delegate gateway questions of arbitrability, she would need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity – a question the Supreme Court itself has deemed 'rather arcane.'") (citations omitted). Therefore, Plaintiffs' Distributorship Agreements do not contain enforceable delegation clauses, and the enforceability of the arbitration agreements is directly before the Court.

### 3. As Discussed In Detail In Plaintiffs' TRO Application, Matco's Arbitration Agreement in Unenforceable On Several Grounds

As discussed in detail in Plaintiffs' TRO (pp. 8-22), the Northern District of California has held that Matco's purported arbitration and forum selection clauses are void and unenforceable according to their own terms. *Fleming*, *supra*, 384 F.Supp.3d at 1131-1137. The Ninth Circuit has affirmed the Northern District of California's decision on its merits. *In re Matco Tools Corp., supra*, 2019 WL 5490960, at *1. For the same reasons as identified by the Northern District and the Ninth Circuit, Matco's arbitration agreement and forum selection clause are unenforceable as a matter of law. Separately, collateral estoppel dictates that Matco should be precluded from relitigating the enforceability of its arbitration and forum selection clauses. Finally, Matco's arbitration agreement and forum selection clauses are procedurally and substantively unconscionable.

### 4. The FAA Does Not Apply, Rendering Matco's Ohio Forum Selection and Choice of Law Clauses Separately Unenforceable

The *Fleming* court correctly recognized that because Matco's arbitration agreement is void and unenforceable, the Federal Arbitration Act does not apply, and does not preempt either Labor Code section 925 or Business and Professions Code section 20040.5. *Fleming, supra*, 384 F.Supp.3d at 1133 ("Because the arbitration provision is void, the FAA does not preempt Cal. Bus. & Prof. Code § 20040.5 and the forum selection clause has no effect.").

Therefore, section 925 and section 20040.5 both render Matco's forum selection clause unenforceable. Lab. Code § 925(a)(1); Bus. & Prof. Code § 20040.5. Similarly, section 925 renders Matco's Ohio choice of law clause unenforceable. Lab. Code § 925(a)(2); *see* Goro Decl., ¶¶ 2-6, Ex. B; Aguilera Decl., ¶ 2-6, Ex. B.

## II. CONCLUSION

For the above reasons, the Court should issue Plaintiffs' TRO, or alternatively, shorten the hearing date on Plaintiff's motion for preliminary injunction.

Respectfully submitted:

DATED: January 21, 2020

**NICHOLAS & TOMASEVIC, LLP**

By: */s/ Ethan T. Litney*
Craig M. Nicholas
Alex Tomasevic
Shaun Markley
Ethan T. Litney
225 Broadway, Floor 19
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: elitney@nicholaslaw.org

Attorneys for Plaintiffs