1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 EMANUEL AGUILERA, an individual; ROCIO AGUILERA, an individual; and SIMON GORO, an individual, 12 13 Plaintiffs, 14 15 v. 16 MATCO TOOLS CORPORATION, a Delaware corporation, 17 Defendant. | Case No.:  3:19-cv-01576-AJB-AHG **ORDER:** **(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (Doc. No. 6)** **(2) GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 18)** |

18

19          This action can be distilled down to one simple dispute—whether this Court should

20 enjoin Defendant Matco Tools Corporation ("Matco") from proceeding with arbitration

21 against Plaintiffs Emanuel Aguilera, Rocio Aguilera, and Simon Goro ("Plaintiffs") in

22 Ohio. On January 31, 2020, the Court granted Plaintiffs' *ex parte* application for a

23 temporary restraining order, temporarily enjoining Matco from arbitrating its claims

24 against Plaintiffs in the arbitration proceedings in Ohio. Now, currently pending before the

25 Court is: (1) Matco's motion to dismiss, (Doc. No. 6) and (2) Plaintiffs' motion for

26 preliminary injunction, (Doc. No. 18). Both motions have been fully briefed and the Court

27 heard both motions for oral argument on March 5, 2020. (Doc. Nos. 16, 17, 30, 32.) For

28 the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART**

1

Matco's motion to dismiss, and **GRANTS** Plaintiffs' motion for preliminary injunction.

# I. BACKGROUND

## A. The Parties and Disputes

Headquartered in Stow, Ohio, Matco Tools Corporation markets mechanic repair tools, diagnostic equipment, and toolboxes. (First Amended Complaint ("FAC") ¶ 12.) Matco contracts with individual entrepreneurs, also known as "Distributors," to display and sell Matco branded tools through "mobile distributorships." (Doc. No. 28 at 12.) Matco requires all Distributors and their spouses to sign its "Distributorship Agreement" and pay a corresponding fee. (Doc. No. 24-1 at 6.)

Plaintiffs Emanuel Aguilera, his spouse, Rocio Aguilera, and Simon Goro are all residents of California. (FAC ¶ 10–12.) Plaintiffs and their spouses signed a Distributorship Agreement in June 2018. (Doc. No. 28 at 13.) Plaintiffs allegedly borrowed funds from Matco pursuant to a promissory note in connection with their franchise distributorships. (*Id.*) Plaintiffs then purchased tools from Matco, and sold the tools to customers. (*Id.*) Both Plaintiffs Emanuel Aguilera and Simon Goro operated distributorships solely in California until November 2018. (*Id.*)

Plaintiffs allege Matco refused to recognize the Distributors as employees, and deprived the Distributors of protections under California law such as overtime pay and reimbursement of business expenses. (Doc. No. 24-1 at 7.) Matco, on the other hand, contends the Distributors are independent contractors. (Doc. No. 28 at 13.)

However, before getting to the merits of the case, the parties currently dispute which forum, if any, the lawsuit should appropriately be filed in. Specifically, Plaintiffs and Matco clash over Matco's Dispute Resolution provisions in the Distributorship Agreements, and the provisions requiring Distributors to submit to binding individual arbitration in Ohio for nearly all disputes. (Doc. No. 24-1 at 7.) While Matco contends otherwise, Plaintiffs allege the arbitration and forum selection clauses contained in their Distributorship Agreements are unenforceable. (*Id.*)

//

**B.      Plaintiffs' Dismissed California Action and Matco's Petition to Compel Arbitration Pending in Ohio**

Previously on December 7, 2018, Plaintiffs filed a class action lawsuit on behalf of themselves and other Matco Distributors and their spouses in Alameda County Superior Court, alleging that they had been misclassified as "independent contractors." (Doc. No. 24-1 at 7.) Matco removed the action to the United States District Court for the Northern District of California ("Northern District of California") on January 18, 2019. (Doc. No. 28 at 15); *see Emanuel Aguilera et al. v. Matco Tools Corporation*, Case No.: 19-CV-00321-YGR (N.D. Cal. 2019). On March 11, 2019, Matco moved to dismiss or transfer the action to the United States District Court for the Northern District of Ohio ("Northern District of Ohio"). (*Id.*) Instead of opposing Matco's motion, Plaintiffs agreed to dismiss the case without prejudice, and the parties filed a request for dismissal on March 22, 2019. (*Id.* at 16.) Plaintiffs did not re-file their lawsuit. (Doc. No. 24-1 at 7.) On March 25, 2019, Matco then initiated an action against Plaintiffs in the Northern District of Ohio by filing a petition to compel arbitration of Plaintiffs' dismissed California claims. (*Id.* at 7); *Matco Tools Corporation v. Aguilera et al.*, Case No.: 19-cv-00641-PAB (N.D. Ohio 2019). The petition is fully briefed, and currently pending before the Northern District of Ohio. (*Id.*)

**C.      Matco's Ohio Arbitrations Against Plaintiffs**

Then on June 28, 2019, Matco submitted an arbitration demand before the American Arbitration Association ("AAA") in Ohio against Plaintiffs Emanuel and Rocio Aguilera. (Doc. No. 28 at 16.) That same day, Matco filed a separate demand for arbitration—again before the AAA in Ohio—against Plaintiff Simon Goro and his wife. (*Id.*) In both arbitrations before the AAA, Matco seeks amounts relating to Plaintiffs' alleged failure to pay on their promissory notes. (Doc. No. 6 at 14.)

On September 19, 2019, Plaintiffs Emanuel and Rocio Aguilera contested the validity of the arbitration provision in their proceedings. (Doc. No. 30 at 16.) On December 16, 2019, the arbitrator ruled that the provision was enforceable. (*Id.*) Plaintiff Simon Goro and his wife are also challenging the arbitration provision in their arbitration proceeding.

(*Id.* at 17.)

**D.     The *Fleming* Action: The Northern District of California and Ninth Circuit Decisions**

Matco's classification of its workers as independent contractors is also being challenged by a different plaintiff, John Fleming, in a putative class action filed on January 25, 2019 in the Northern District of California. *See John Fleming v. Matco Tools Corporation, et al.*, No. 3:19-cv-00463-WHO, (N.D. Cal. Jan 25, 2019) (the "*Fleming* Action"); (Doc. No. 24-1 at 7.) Plaintiffs in this instant matter are absent class members in the *Fleming* Action. (Doc. No. 16 at 7.) And Plaintiff Rocio Aguilera does not meet the criteria for putative class membership as defined in the *Fleming* complaint. (Doc. No. 17 at 15 n.4.) While John Fleming's Distributorship Agreement is not exactly the same as Plaintiffs' in this instant action, the dispute resolution provisions in John Fleming's Distributorship Agreement is not materially different from the provisions signed by Plaintiffs here. (*Id.* at 10.) On February 19, 2019, in the *Fleming* Action, Matco moved to enforce the Ohio forum selection clause in John Fleming's Distributorship Agreement by filing a motion to dismiss, or, in the alternative, motion to transfer venue based on *forum non conveniens*. (Doc. No. 28 at 15.) The district court denied the motion on May 3, 2019, holding the arbitration and forum selection clauses in John Fleming's Distributorship Agreement invalid. *See Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124 (N.D. Cal. 2019). Specifically, the district court held the Federal Arbitration Act ("FAA") did not preempt Cal. Bus. & Prof. Code § 20040.5, which bars non-California forum selection clauses in franchise agreements. *Id.* at 1137. Additionally, the district court reasoned the arbitration provision containing the forum selection clause was invalid because it contained a Private Attorneys General Act ("PAGA") waiver, which triggered a "blow up" provision invalidating the arbitration provision. *Id.* at 1133.

On June 4, 2019, Matco filed a petition for writ of mandamus with the Ninth Circuit, on the issue of whether the district court properly determined the validity of the arbitration provision before ruling on the enforceability of the forum selection clause set forth in the

4

arbitration provision. (Doc. No. 28 at 15.) On October 25, 2019, the Ninth Circuit denied the petition, affirming the district court's decision. *In re Matco Tools Corp.*, 781 F. App'x 681 (9th Cir. 2019). The Ninth Circuit held that the district court "did not err—much less clearly so—in considering the validity of the franchise agreement's arbitration provision." *Id.* at 682. The Ninth Circuit also held that the district court followed "binding Ninth Circuit precedent" in concluding that: (1) "Matco and Fleming did not agree to arbitrate their dispute under the plain terms of their contract," (2) absent a valid arbitration provision, the FAA does not preempt Cal. Bus. & Prof. Code § 20040.5, and (3) the forum selection clause was unenforceable. (*Id.*) Matco filed a petition for rehearing en banc, which was denied by the Ninth Circuit on January 3, 2020. (Doc. No. 30 at 15.)

## II.   PROCEDURAL HISTORY

Plaintiffs filed this action in this Court on August 21, 2019. (Doc. No. 1.) A FAC was filed on August 22, 2019. (Doc. No. 3.) In the FAC, Plaintiffs assert three causes of action for: (1) declaratory judgment, holding the clauses requiring individual arbitration exclusively in Ohio void and unenforceable, (2) injunctive relief enjoining the Ohio proceedings, and (3) violation of California's Unfair Competition Law. (*Id.*) On October 10, 2019, Matco filed a motion to dismiss for lack of jurisdiction and failure to state a claim. (Doc. No. 6.) Matco seeks dismissal based on (1) the first-to-file rule, (2) lack of jurisdiction because the Distributorship Agreement allegedly delegated issues of arbitrability to an arbitrator, and (3) the failure to state a claim on the UCL, restitution, and injunctive claims for relief. Plaintiffs opposed the motion, (Doc. No. 16) and Matco replied, (Doc. No. 17).

Plaintiffs then filed a motion for preliminary injunction on December 27, 2019. (Doc. No. 18.) Matco opposed the motion. (Doc. No. 30). Plaintiffs replied on January 31, 2020. On January 13, 2020, after filing their motion for preliminary injunction, Plaintiffs filed an *ex parte* application for a temporary restraining order, or in the alternative, for an order shortening time on Plaintiffs' motion for preliminary injunction. (Doc. No. 24.) Matco opposed the *ex parte* application, (Doc. No. 28) and Plaintiffs replied, (Doc. No.

29). On January 21, 2020, the Court granted Plaintiffs' *ex parte* application for a temporary restraining order. (Doc. No. 31.) This order follows.

## III.  REQUESTS FOR JUDICIAL NOTICE

Matco requests judicial notice of (1) numerous documents filed in various related cases in federal court and state court, (2) the United States District Courts National Judicial Caseload Profile, and (3) the California Assembly Committee on Judiciary's Bill Analysis. (Doc. Nos. 6-3, 17-1, 30-1.) Similarly, Plaintiffs also request judicial notice of several documents filed in various related cases. (Doc. No. 16-1.)

Federal Rule of Civil Procedure 201 permits a court to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Under this rule, a court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Here, under Rule 201, judicial notice of the several documents filed in the related case proceedings is appropriate. "Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings." *See NuCal Food, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012). However, "[w]hile the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents . . . are not." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004). Based on this authority, the Court **GRANTS** both Matco's and Plaintiffs' requests to the extent they seek judicial notice of the existence of the documents filed in the various related court proceedings.

Additionally, Matco's request for judicial notice of the United States District Courts National Judicial Caseload Profile and the California Assembly Committee on Judiciary's

Bill Analysis are also **GRANTED** as they are undisputed matters of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

## IV.    MATCO'S MOTION TO DISMISS

To start, the Court will first address Matco's motion to dismiss. (Doc. No. 6.) Matco moves to dismiss on multiple grounds, arguing (1) the first-to-file rule warrants dismissal or a stay, (2) Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction because the Distributorship Agreements delegate questions of arbitrability to an arbitrator, (3) Plaintiffs' UCL, restitution and injunctive relief claims are defective, and (4) the *forum non conveniens* doctrine warrants dismissal or transfer. (*Id.* at 2–3.) The Court will address each ground for dismissal in turn.

### A.    Legal Standards

#### 1.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1),

the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### 2. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, a reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664.

### B. Discussion

#### 1. The First-to-File Rule

The Court first turns to whether the first-to-file rule warrants a dismissal or stay of the case. Matco argues this action should be dismissed under the "first-to-file" rule because Plaintiffs' action was filed after both the Ohio district court action, and after Matco's Petition for Writ of Mandamus proceeding. (Doc. No. 6 at 17.) Plaintiffs oppose, arguing that exceptions to the first-to-file rule apply, and it would be inequitable to haul Plaintiffs to Ohio to litigate claims Plaintiffs already dismissed. (Doc. No. 16 at 22.) The Court agrees

with Plaintiffs.

A federal district court has discretion to dismiss, stay, or transfer a case to another district court under the first-to-file rule. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982); *Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments. *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (citations omitted). Courts analyze three factors in determining whether to apply the first-to-file rule: (1) chronology of the actions; (2) similarity of the parties; and (3) similarity of the issues. *Schwartz v. Frito–Lay N. Am.*, No. C–12–02740 EDL, 2012 WL 8147135, at *2 (N.D. Cal. Sept. 12, 2012) (citing *Alltrade*, 946 F.2d at 625).

Here, even if the foregoing three elements are met, the Court is persuaded by Plaintiffs' argument that an exception should apply to preclude application of the first-to-file rule. "The most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade*, 946 F.2d at 628. The first-to-file rule "is not a rigid or inflexible rule to be mechanically applied," and in certain circumstances "even though the requisite factors for the rule's application have been met, courts nonetheless decline to follow its dictates." *Pacesetter*, 678 F.2d at 95. Additionally, "[t]he circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." *Alltrade*, at 628. "Generally, a suit is anticipatory when the plaintiff files suit upon receipt of specific, concrete indications that a suit by the defendant is imminent." *Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1383 (S.D. Cal. 2014).

Plaintiffs argue the anticipatory suit exception applies because Matco anticipatorily filed suit in the Northern District of Ohio, and specifically mentioned in their petition to compel arbitration: "Matco is informed and believes that [Plaintiffs] intend to violate the Distributorship Agreements, again, by filing another lawsuit against Matco in California." (Doc. No. 16.) Plaintiffs also allege Matco agreed in bad faith to voluntarily dismiss Plaintiffs' claims in the Northern District of California, purely with the intent to engage in

9

forum shopping, and bring Plaintiffs' claims in Ohio. (*Id.* at 24.) Matco, on the other hand, states the anticipatory suit exception should not apply because Matco had no notice of any "specific, concrete indications" that a suit by Plaintiffs was imminent. (Doc. No. 6 at 19.)

Matco's position is unavailing. Matco's argument before this Court that it did not have "specific, concrete indications" that Plaintiffs was going to file suit cannot be reconciled with Matco's representation to the Ohio district court that it believed Plaintiff was going to file another lawsuit in California. The two positions are clearly contradictory. Additionally, it would be inequitable in this situation to apply the first-to-file rule in favor of the Ohio forum because Matco seeks to arbitrate in Ohio claims Plaintiffs *brought first* and voluntarily dismissed in California. As such, the Court exercises its discretion to disregard the first-to-file rule. *See Alaris Med. Sys. Inc. v. Filtertek Inc.*, No. CIV. 00-CV-2404-LAJB, 2001 WL 34053241, at *3 (S.D. Cal. Dec. 20, 2001).

## 2. The Court Does Not Lack Subject Matter Jurisdiction

Next, Matco argues dismissal is warranted because the Court lacks subject matter jurisdiction due to the delegation provision in the Distributorship Agreement. According to Matco, the Distributorship Agreement "clearly and unmistakably" delegates questions of arbitrability to an arbitrator. (Doc. No. 6 at 21.) Section 12.1 of the Distributorship Agreement says all "disputes and controversies . . . arising from or related to this Agreement . . . will be determined exclusively by binding arbitration." (FAC, Ex. A & B at § 12.1.) Plaintiffs respond with an attack on the arbitration agreement, arguing that because the arbitration agreement is unenforceable, Plaintiffs did not delegate arbitrability. (Doc. No. 16 at 16.) In short, Plaintiffs contend the arbitration agreement contains an unenforceable PAGA waiver, which triggers a blow-up provision invalidating the entire arbitration agreement and the delegation provision contained therein. (*Id.* at 16–18.)

"[U]nlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83

10

(2002)). "In other words, there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Id.* Clear and unmistakable evidence of an agreement to arbitrate arbitrability "might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quoting *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 79–80 (2010) (Stevens, J., dissenting)).

Here, the delegation clause does not evince a clear and unmistakable intent to arbitrate the issues of arbitrability. Given the generalized language of the alleged delegation clause, the Court finds no such "clear and unmistakable" agreement to delegate. Notably missing from this alleged delegation clause is any language delegating questions of "interpretation, applicability, enforceability or formation" to an arbitrator. *Cf. Armenta v. Go-Staff, Inc.*, No. 16-CV-2548 JLS (AGS), 2017 WL 1711293, at *1 (S.D. Cal. May 3, 2017) (granting motion to compel arbitration where delegation clause stated "[t]he arbitrator shall have exclusive authority to resolve any dispute relating to the *interpretation, applicability, enforceability, or formation* of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable."); *see Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1077 (N.D. Cal. 2015). And tellingly, Matco's cited authority to support its position are cases in which the delegation clauses contain more specific language evidencing an intent to delegate. *See Brock v. Copart of Wash., Inc.*, No. 3:18-CV-02012-BR, 2019 U.S. Dist. LEXIS 30981, *5 (D. Ore. Feb. 27, 2019) ("[T]he Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the *interpretation, applicability, enforceability, or formation* of this Agreement.") (emphasis added); *Dvorsky v. Axis Global Sys., LLC*, No. CV 17-422 DMG (AJWx), 2017 U.S. Dist. LEXIS 222959, *2 (C.D. Cal. June 15, 2017) ("Any and all disputes arising under or *relating in any way to the interpretation or application of this Agreement* concerning Employee's employment with the Company, payment from that employment and/or termination thereof shall be subject to arbitration") (emphasis added). No similar language exists here.

11

Matco claims the Distributorship Agreement's incorporation of the AAA Rules demonstrates clear and unmistakable evidence of the parties' intent to delegate arbitrability. (Doc. No. 6 at 22.) It is true that under some circumstances, incorporating the AAA rules into an agreement can support a clear and unmistakable intent to delegate. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015). But courts have held that whether this rule applies depends on whether the parties are sophisticated and understand the import of such an incorporation. *See Meadows*, 144 F. Supp. 3d at 1079. Indeed, "an inquiry about whether the parties clearly and unmistakably delegated arbitrability by incorporation should first consider the position of those parties." *Id.* at *6. To a sophisticated party, it might be reasonable to infer that incorporation of the rules demonstrates an intent to delegate. "But applied to an inexperienced individual, untrained in the law, such a conclusion is likely to be much less reasonable." *Id.* Plaintiffs here are unsophisticated franchisees, and there is no evidence showing it would be reasonable for Plaintiffs to recognize that the incorporation of the AAA Rules meant delegating the question of arbitrability to an arbitrator. *Nagrampa v. MailCoups*, 469 F.3d 1257, 1282 (9th Cir. 2006) (quoting *Postal Instant Press, Inc. v. Sealy*, 43 Cal. App. 4th 1704, 1715–16 (1996)) ("Although franchise agreements are commercial contracts they exhibit many of the attributes of consumer contracts. The relationship between franchisor and franchisee is characterized by a prevailing, although not universal, inequality of economic resources between the contracting parties.").

Accordingly, the Court concludes this dispute should not be submitted to an arbitrator.

### 3. Plaintiffs' Unfair Competition Law ("UCL"), Restitution, and Injunctive Relief Claims

Matco also seeks to dismiss Plaintiffs' UCL, injunctive relief, and restitution claims under Federal Rule of Civil Procedure 12(b)(6). The Court will review each basis for dismissal below.

//

3:19-cv-01576-AJB-AHG

### a) Plaintiffs Lack Standing Under the California UCL

In their FAC, Plaintiffs brings a claim against Matco under California's UCL, arguing Matco's litigation activity in forcing arbitration contravenes California law. (FAC ¶ 69.) In response, Matco seeks dismissal of the UCL claim, arguing Plaintiffs lack standing to assert the claim, at least as the claim pertains to the litigation in Ohio district court. The Court agrees.

A plaintiff injured by a violation of the UCL may only seek restitution and injunctive relief. *See* Cal. Bus. & Prof. § 17203. A plaintiff bears the burden of establishing that she has standing for each type of relief sought. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Standing under the UCL is substantially narrower than Article III standing. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 324 (2011). To satisfy this standing requirement, the California Supreme Court requires a plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. economic injury, and (2) show that the economic injury was the result of, i.e., caused by the unfair business practice . . . that is the gravamen of the claim." *Kwikset Corp.*, 51 Cal. 4th at 322.

Although Plaintiffs have likely expended significant resources in defending against the proceedings in Ohio district court, Plaintiffs are still precluded from asserting their UCL claim due to the *Noerr–Pennington* doctrine. The essence of the *Noerr–Pennington* doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Petitioning the government includes using courts to advocate for one's business and economic interests. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972).

Here, the *Noerr–Pennington* doctrine bars Plaintiffs' UCL claim to the extent it is premised on liability arising from Matco's petition to compel arbitration in the Northern District of Ohio. Plaintiffs' response that the "sham litigation exception" applies does not change this result. The sham litigation exception only applies where (1) the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; (2) where the

13

conduct involves a series of lawsuits "brought pursuant to a policy of starting legal proceedings without regard to the merits" and for an unlawful purpose; and (3) if the allegedly unlawful conduct "consists of making intentional misrepresentations to the court." *Sosa*, 437 F.3d 923, 938 (9th Cir. 2006). But this exception does not apply as Matco's petition is not objectively baseless or fraught with misrepresentations.

Accordingly, to the extent Plaintiffs assert a UCL claim premised on the litigation in the Northern District of Ohio, Plaintiffs lack standing and, the Court **GRANTS** Defendants' motion to dismiss, and this claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

### b)     Plaintiffs' Claim for Restitution under the UCL

Matco also contends that Plaintiffs are not entitled to restitution under the UCL. (Doc. No. 6 at 27.) Under California UCL law, a restitution order compels "a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144–45 (2003). The Court agrees with Matco that the only expenditures alleged are litigation costs, which were not paid to Matco. (Doc. No. 6 at 27.) Thus, restitution is not available, and the Court **GRANTS** Matco's motion on this basis.

### c)     Plaintiffs' Injunctive Relief Claims

Finally, Matco moves to dismiss Plaintiffs' claims for injunctive relief to the extent they are premised on enjoining the currently pending action in the Northern District of Ohio. (Doc. No. 17 at 13.) Matco states that while it does not concede that an injunction precluding *arbitration* in Ohio would be proper, it acknowledges "that such claims are not necessarily defective as a matter of law and thus [Matco] did not seek dismissal of them pursuant to Rule 12(b)(6)." (Doc. No. 17 at 13.) As to enjoining Matco from proceeding with the litigation in the Northern District of Ohio, Matco argues Plaintiffs cannot demonstrate that litigating in the Ohio district court will cause irreparable injury or that

14

Plaintiffs lack of adequate legal remedies. (Doc. No. 6 at 25–26.)

Courts have held that forcing parties to arbitrate under an invalid arbitration agreement constitutes irreparable harm. *World Grp. Sec. v. Tiu*, No. CV 03-2609 NM SHSX, 2003 WL 26119461, at *7 (C.D. Cal. July 22, 2003). But while this Court may conclude that forcing Plaintiffs to arbitrate would constitute irreparable harm, and may generally enjoin Matco from arbitrating in Ohio, Plaintiffs do not provide authority stating that a district court may enjoin a party from proceeding in another district court. Accordingly, the Court **GRANTS** Matco's motion to the extent it seeks to dismiss Plaintiffs' injunctive relief claim as it pertains to the Ohio district court proceeding.

### 4.    Motion to Dismiss Under *Forum Non Conveniens*

Lastly, the Court declines to address Matco's alternative argument that the *forum non conveniens* doctrine warrants dismissal or transfer. As Matco states, this argument "is asserted in the alternative, if the Northern District of Ohio rules on Matco's Petition to Compel Arbitration, and, the Ninth Circuit rules on Matco's Petition for Writ of Mandamus, before this Court rules on the instant motion." (Doc. No. 6 at 28 n.10.) Here, the Northern District of Ohio has yet to rule on Matco's petition to compel arbitration and so, the Court will not address Matco's motion to dismiss on this ground.

\* \* \*

In summation, (1) the first-to-file rule does not warrant dismissal of this action, (2) the Court does not lack subject matter jurisdiction due to the purported delegation provision, (3) Plaintiffs' UCL claim is **DISMISSED WITHOUT LEAVE TO AMEND** to the extent it is premised on the Ohio district court proceeding, (4) Plaintiffs' restitution claim under the UCL is also **DISMISSED WITHOUT LEAVE TO AMEND**, and (5) Plaintiffs' injunction relief claim is also **DISMISSED WITHOUT LEAVE TO AMEND** only to the extent it is premised on enjoining the Ohio district court proceeding.

## V.    PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Having addressed Matco's motion to dismiss, the Court will now turn to Plaintiffs' motion for preliminary injunction. (Doc. No. 18.) On January 31, 2020, the Court issued a

TRO temporarily enjoining Matco from arbitrating its claims against Plaintiffs in the arbitration proceedings in Ohio. The TRO did not affect the parties' proceeding before the Northern District of Ohio. Plaintiffs' motion for a preliminary injunction is substantially similar to its *ex parte* application for a TRO. Because the standard for the issuance of a TRO and preliminary injunction are the same, and there does not appear to be changed circumstances, the Court **GRANTS** Plaintiffs' motion for preliminary injunction.

### A.    Legal Standard

Federal Rule of Civil Procedure 65 provides authority to issue either preliminary injunctions or temporary restraining orders. Plaintiffs seeking these forms of injunctive relief must demonstrate (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)).

### B.    Discussion

#### 1.    Likelihood of Success on the Merits

Plaintiffs provide several reasons why they are likely to succeed in enjoining Matco from pursuing with arbitration against Plaintiffs in Ohio. These arguments are with merit, and the Court addresses them below.

##### a)    Collateral Estoppel and the Unenforceability of the Arbitration Provision

Plaintiffs argue collateral estoppel bars Matco from relitigating the validity of the forum selection clause and the arbitration provision. (Doc. No.18-1 at 15.) Matco opposes, maintaining that collateral estoppel is a gateway issue for an arbitrator, the elements of collateral estoppel are not present, and its application would be unfair to Matco. (Doc. No. 28 at 22.) To invoke nonmutual offensive issue preclusion, a plaintiff has to prove: (1) the defendant was afforded a full and fair opportunity to litigate the issues in the prior actions; (2) the issues were actually litigated and necessary to support the judgments; (3) the issues

16

were decided against defendant in final judgments; and (4) defendant was a party or in privity with a party in the prior proceedings. *Resolution Tr. Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999).

In addressing these elements, the Court notes that the elements necessary for collateral estoppel to apply are substantially met. However, at oral argument, Matco represented that it intends to file a writ of certiorari to the United States Supreme Court regarding the denial by the Ninth Circuit of its petition for writ of mandamus. As such, the Court will defer ruling on the issue of collateral estoppel. However, whether or not collateral estoppel applies, the Court finds the district court's order in the *Fleming* Action, and the Ninth Circuit's decision regarding the petition for writ of mandamus persuasive authority on the issue of the validity of the forum selection and arbitration clauses. *See Fleming*, 384 F. Supp. 3d at 1137 ("Matco's motion to dismiss is denied because by the Distribution Agreement's own terms, the arbitration provision is invalid and Section 20040.5's prohibition of forum selection clauses in franchise agreements restricting venue to a forum outside California is not preempted by the FAA."); *see also In re Matco Tools Corp.*, 781 F. App'x at 682 (holding "the district court followed binding Ninth Circuit precedent in concluding" that there was no agreement to arbitrate or a valid forum selection clause). In considering this persuasive authority, the Court concludes Plaintiffs have demonstrated a likelihood of success on the merits of invalidating the forum selection and arbitration clauses. *See Nuh Nhuoc Loi v. Scribner*, 671 F. Supp. 2d 1189, 1201 n.10 (S.D. Cal. 2009) ("Although still not binding precedent, unpublished decisions [postdating 2006] have persuasive value and indicate how the Ninth Circuit applies binding authority.").

### a)    The Unenforceability of the Arbitration Provision

Even if collateral estoppel were not to apply, Plaintiffs have demonstrated a likelihood of success on their argument that Plaintiffs' Distributorship Agreement is unenforceable due to its inclusion of a Private Attorneys General Act ("PAGA") claim waiver. PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the

employee and fellow employees, with most of the proceeds of that litigation going to the state." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 429 (9th Cir. 2015).

The PAGA waiver in Plaintiffs' Distributorship Agreement reads, "THE DISTRIBUTOR EXPRESSLY WAIVES ANY RIGHT TO ARBITRATE OR LITIGATE AS A CLASS ACTION OR *IN A PRIVATE ATTORNEY GENERAL CAPACITY*." (*See* Doc. No. 24-3, Ex. A ¶ 12.7 (emphasis added).) Also included in the Distributorship Agreement is a "blow-up provision" that provides, "if the provision prohibiting classwide or *private attorney general arbitration is deemed invalid*, *then the provision requiring arbitration of breaches between the parties shall be null and void* and there shall be no obligation to arbitrate such breaches." (*Id.* ¶ 12.12 (emphasis added).)

It is well-established in the Ninth Circuit that provisions purporting to waive PAGA claims are unenforceable in arbitration agreements. Indeed, in *Sakkab*, the Ninth Circuit held that pre-dispute agreements to waive PAGA claims are unenforceable because: (1) agreements exculpating a party for violations of the law are unenforceable; and (2) a law established for a public reason may not be contravened by private agreement. *Sakkab*, 803 F.3d at 429. It is quite clear that the arbitration provisions in Plaintiffs' Distributorship Agreement contain improper PAGA waivers. Thus, under settled Ninth Circuit law, the PAGA waiver constitutes an impermissible pre-dispute agreement to waive PAGA claims. This invalid PAGA waiver, read in conjunction with the "blow-up provision" renders the arbitration agreement likely unenforceable.

**b)  The Invalid Forum Selection Clause**

Also likely invalid is the forum selection clause. The forum selection clause in Plaintiffs' agreement states, "[u]nless this requirement is prohibited by law, all arbitration hearings must and will take place exclusively in Summit or Cuyahoga County, Ohio. All court actions, mediations or other bearings or proceedings initiated by either party against the other party must and will be venued exclusively in Summit or Cuyahoga County, Ohio." (*See* Doc. No. 24-3, Ex. A ¶ 12.10.)

California Business and Professions Code § 20040.5 makes void any "provision in

18

a franchise agreement restricting venue to a forum outside this state . . . with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." Cal. Bus. & Prof. Code § 20040.5. The Ninth Circuit has held that the statute "expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). A forum selection clause "that requires a California franchisee to resolve claims related to the franchise agreement in a non-California court[,]" such as the one here, "directly contravenes this strong public policy and is unenforceable under the directives of *Bremen*." *Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 (1972)).

Here, Matco does not dispute that it styled its agreements with the Distributors as franchise agreements. The Ninth Circuit in the *Fleming* Action explicitly determined that "applying section 20040.5, the forum-selection clause here is unenforceable because it would require Fleming, a California franchisee, to litigate in a non-California venue." *In re Matco Tools Corp.*, 781 F. App'x at 683. The Court finds no reason to diverge from the Ninth Circuit's reasoning, given that the forum selection clause in Fleming's Distributorship Agreement does not materially differ from Plaintiffs' here. Thus, given the mandate of Cal. Bus. & Prof. Code § 20040.5, the Court holds that there is a likelihood of success in invalidating the forum selection clause.

### B.    Irreparable Harm in The Absence of a Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish a likelihood of irreparable harm in the absence of relief. *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1242 (9th Cir. 2013). "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Id.* at 21. A court may not rely on "unsupported and conclusory statements regarding harm [a plaintiff] *might* suffer." *Id.* at 19 (internal quotation marks omitted; emphasis in the original).

Without the issuance of a preliminary injunction, not only may Plaintiffs be forced to arbitrate claims they already dismissed, Plaintiffs will suffer irreparable injury and

abridgement of their rights and remedies under California law. *See Textile Unlimited, Inc. v. ABMH and Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (confirming preliminary injunction based on district court's finding that plaintiff would suffer irreparable harm if arbitration were not stayed); *World Grp. Sec. v. Tiu*, No. CV 03-2609 NM SHSX, 2003 WL 26119461, at *7 (C.D. Cal. July 22, 2003) ("[F]orcing Plaintiff to arbitrate would deprive it of its right to choose a forum and result in simultaneous litigation of this dispute in two forums, causing Plaintiff to expend time and incur additional legal expenses for which it has no adequate remedy at law."). Therefore, this factor weighs in favor of Plaintiffs.

### C. Balance of Hardships

In order for a preliminary injunction to issue, courts must weigh "the competing claims of injury and [] consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987). Here, the balance of equities tips sharply in favor of Plaintiffs as California residents. Indeed, all of Plaintiffs' work for Matco was performed in California. (Doc. No. 24-23 at ¶ 5; Doc. No. 24-26 at ¶ 5.) Plaintiffs have resided in California for their entire adult lives. (Doc. No. 24-23 at ¶ 4; Doc. No. 24-26 at ¶ 4.) And outside of traveling to Ohio for approximately ten days to receive training from Matco, Plaintiffs have never traveled to Ohio, and never intend to return to Ohio. (Doc. No. 24-23 at ¶ 5; Doc. No. 24-26 at ¶ 5.) Matco, on the other hand, does not explain why it would be harmed if its arbitration proceedings against Plaintiffs *in its home state* were preliminarily enjoined. Furthermore, the Court agrees with Plaintiffs that a preliminary injunction would not divest Matco of its rights to pursue its claims in a proper forum. (Doc. No. 24-1 at 29.) Accordingly, this factor weighs heavily in favor of Plaintiffs as well.

### D. Public Interest

The public interest analysis for the issuance of a preliminary injunction requires courts to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief. *Cottrell*, 632 F.3d at 1138 (citation omitted). An issuance of a preliminary injunction based on these facts is not in contravention of the public's

interest. Rather, it furthers the public's interest in ensuring California franchisees are not burdened with the "expense, inconvenience, and possible prejudice of litigating in a non-California venue." *Jones*, 211 F.3d at 498. Additionally, injunctive relief also furthers the public's interest in ensuring that parties are not forced to arbitrate under invalid arbitration provisions. *Lyon v. Neustar, Inc.*, No. 219CV00371KJMKJN, 2019 WL 1978802, at *9 (E.D. Cal. May 3, 2019) ("[A]ny contract provision that runs afoul of section 925 is contrary to California's strong public interest in protecting its employees. On that ground alone, the public policy interests relevant here weigh in support of preliminarily enjoining Neustar's pursuit of arbitration outside of California."). As such, this factor too weighs in favor of a preliminary injunction.

\* \* \*

In conclusion, with all four factors favoring Plaintiffs, Plaintiffs have adequately shown they are entitled to a preliminary injunction.

## VI.    CONCLUSION

In light of the foregoing, Court **GRANTS IN PART AND DENIES IN PART** Matco's motion to dismiss. The Court also **GRANTS** Plaintiffs' motion for preliminary injunction. Defendant Matco Tools Corporation is preliminarily enjoined from arbitrating any claims against Plaintiffs Emanuel Aguilera, Rocio Aguilera, and Simon Goro under the "Distribution Agreement" including in any arbitration proceeding in the state of Ohio. This preliminary injunction does not affect the parties' proceeding before the Northern District of Ohio. This injunction shall remain in effect until the Court enters judgment on the merits or until otherwise ordered by the Court.

**IT IS SO ORDERED.**

Dated:  March 12, 2020

Hon. Anthony J. Battaglia
United States District Judge